381 So.2d 826 (1980)
STATE of Louisiana
v.
Philip J. FRANKLIN.
No. 66343.
Supreme Court of Louisiana.
March 12, 1980.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., William W. Hall, Abbott Reeves, Asst. Dist. Attys., for plaintiff-respondent.
John M. Lawrence, New Orleans, for defendant-relator.
*827 PER CURIAM.
Defendant is charged in separate grand jury indictments with aggravated rape, La.R.S. 14:42 and aggravated crime against nature, La.R.S. 14:89.1, both offenses involving the same victim. He entered pleas of not guilty, and moved in the trial court to suppress his confession given to the authorities shortly after his arrest. He also moved to suppress any in-court identification testimony from the victim at trial. After a hearing conducted on November 14, 1979, the trial court denied both motions.
We have granted defendant's application for supervisory writs to review the judgment below. We affirm as to the identification question, agreeing with the trial court that the victim's failure to identify defendant in any pretrial context put to rest defense concern her in-court testimony might carry the taint of prior, out-of-court suggestiveness.[1] We note, however, that the state failed to rebut defendant's specific and detailed allegations of physical abuse used by the police to secure his statement. We therefore remand the case to the trial court for retrial of the motion. State v. Simmons, 328 So.2d 149 (La.1976).
Evidence adduced at the hearing on the motion to suppress showed the following. On August 9, 1978, two men sexually assaulted the victim in this case. Investigation of the offense, headed by Detective Stanley Ferguson with the Gretna Police Department, eventually led to defendant's arrest at the home of his parents in New Orleans, August 13, 1978. The arrest came at the hands of a combined force of New Orleans and Jefferson Parish police officers, including Ferguson, who travelled across the river in the company of Officers Breaux and Yaeger. After defendant's booking in New Orleans, the officers returned with their prisoner to Gretna. Shortly thereafter, defendant confessed.
Of the three Gretna police officers, Ferguson alone testified for the state at the suppression hearing. In his account, defendant had received his Miranda warnings immediately upon arrest in his parents' home and again at the Gretna stationhouse, just prior to the tape recorded interrogation. That interrogation took place in his office, Ferguson testified, with Yaeger also present. Ferguson flatly denied the use of any threats, force, intimidation or promises to secure the statement.
Defendant gave a sharply differing account. He testified that the officers stormed into his parents home with guns drawn, snatched him out of bed to Breaux's admonition, "[t]ell him to go ahead and say he did it so it will go easy on him," and thrust him nearly naked into a patrol car. Booking at the New Orleans lock-up proceeded without incident, defendant recounted, but matters took a different course on the trip to Gretna. Defendant claimed that threats by the officers to "kick his black ass" turned to physical abuse at the Gretna stationhouse. The alleged abuse spanned: Ferguson's attempt to smash defendant's head against the side of a car; a beating administered by the officers outside the stationhouse followed inside by the taking of a pubic hair sample at knifepoint; and beatings by all three officers in turn, alone in Ferguson's office. Defendant added that he was recovering at the time from surgical removal of one of his testicles and became *828 alarmed at the prospect of harm to the operation. This confession, he alleged, came on the heels of the last set of beatings. Defendant's parents corroborated his account of the arrest in New Orleans.
Although Ferguson returned to the stand at the close of defendant's testimony, he did not specifically rebut any of defendant's allegations. The defense therefore argues in its application that the trial court erred in overlooking defendant's testimony and finding the confession voluntary. On this record, we agree.
As set forth in State v. Bouffanie, 364 So.2d 971, 973 (La.1978), this Court has repeatedly held that "[b]efore a confession or inculpatory statement can be introduced in evidence the State must prove affirmatively and beyond a reasonable doubt that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises." Bouffanie acknowledges that the trial court's findings in this respect are entitled to great weight. The opinion cautions, however, that ". . . because of the State's burden it is required to rebut specific testimony introduced on behalf of defendant concerning factual circumstances which indicate coercive measures or intimidation, [citation omitted]."
The state has not met that burden here. We find Ferguson's general disclaimer of coercion insufficient to dispell alone the doubt cast on the statement's voluntariness by defendant's specific and detailed allegations of physical abuse. State v. Peters, 315 So.2d 678 (La.1975). As we emphasized in State v. Simmons, supra, 328 So.2d at 151, ". . . the state [can] not merely ignore testimony by the defendant and thereby sustain its burden of proof . . ." Moreover, the officer himself admitted at the hearing that he left defendant in his office with Officer Yaeger for approximately ten minutes while he looked about for a tape recorder. That admission provides some corroboration at least of defendant's account the officers set upon him one at a time. We have repeatedly warned in this regard that the state "cannot simply rely on general testimony of officers not present that they witnessed no coercion, intimidation or other undue influence." State v. Monroe, 305 So.2d 902, 912 (La.1974) (on rehearing). See also State v. Stevenson, 374 So.2d 1189 (La.1979). In this case Officers Yaeger and Breaux, counted by defendant among his assailants, did not testify at the hearing. Their absence weighs critically in the balance here. State v. Monroe, supra.
We therefore hold that on this record, the state has not met its heavy burden of proving beyond a reasonable doubt the voluntariness of defendant's confession. To this extent, we reverse the judgment below. We note, however, that retrial of the motion may cure the error here. State v. Simmons, supra; State v. Franklin, 353 So.2d 1315 (La.1977). Accordingly, we remand this case to the trial court for that hearing, and all proceedings not inconsistent with this opinion.
REVERSED AND REMANDED.
NOTES
[1] Shortly after the offense, the victim identified two individuals (not including defendant) in a photographic line-up. The authorities later determined that the persons identified had no involvement in the case. After his arrest, defendant appeared in a line-up conducted on August 10, 1978. The victim failed to make any identification. It therefore seems clear that the suggestiveness (if any) in the identification procedures could not have led, of its own weight, to the possibility of misidentification in this case. State v. Guillot, 353 So.2d 1005 (La.1977); Manson v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). On this record, we express no opinion on whether defendant's appearance as the accused at trial might alone raise the question of a possible misidentification. See State v. Williams, 375 So.2d 364 (La.1979); State v. Drew, 360 So.2d 500 (La.1978). In any event, as we pointed out in State v. Batiste, 318 So.2d 27, 34 (La.1975), the lack of a pre-trial identification is generally a matter "which addresses itself to the weight of [a witness'] testimony rather than its admissibility."