451 So.2d 104 (1984)
L.D. JOHNSON, Plaintiff-Appellant,
v.
The STATE of Louisiana, Through the DEPARTMENT OF PUBLIC SAFETY, the State Police, et al., Defendants-Appellees.
No. 83-601.
Court of Appeal of Louisiana, Third Circuit.
May 16, 1984.
Rehearing Denied June 14, 1984.
*105 Antoon & Dalrymple, Joseph T. Dalrymple, Alexandria, for plaintiff-appellant.
Gold, Little, Simon, Weems & Bruser, Henry B. Bruser, III, Alexandria, for defendants-appellees.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
GUIDRY, Judge.
The plaintiff, L.D. Johnson, brought this suit seeking damages for false imprisonment. Made defendants were the State of Louisiana, through the Department of Public Safety, Division of State Police (hereafter State Police), the arresting officer, Trooper Wilbert Sanders, and the Sheriff of Rapides Parish, Louisiana, Marshall T. Cappel. The plaintiff reached a settlement with Cappel, and voluntarily dismissed him from the suit. The matter proceeded to trial against the remaining defendants. The trial court rendered judgment in favor of the defendants, and the plaintiff appeals.
On April 14, 1981, the plaintiff, L.D. Johnson, was driving a tractor-trailer rig in Rapides Parish when he was stopped and ticketed for speeding by Trooper Wilbert Sanders. Sanders called in the plaintiff's drivers license number and requested a check on his driving record as well as a N.C.I.C. (National Crime Information Center) check. William Godron, communications supervisor for State Police Troop E, entered the plaintiff's drivers license number into the computer and received the plaintiff's driving record. Godron then ran the N.C.I.C. check by entering the plaintiff's name, date of birth, race and sex into the computer. Godron received a printout from the N.C.I.C. stating that a Leonard Johnson, Jr. was wanted by authorities in Bell County, Texas on charges of aggravated prostitution. The printout further advised that Leonard Johnson, Jr. was to be considered armed and dangerous. The physical description of the plaintiff on his driving record was similar to the physical description of Leonard Johnson, Jr. provided by the N.C.I.C. The date of birth, May 22, 1943, was identical. Godron advised Trooper Sanders to stand by to await the arrival of another trooper who was being sent to the scene.
Trooper Herbert Cross arrived at the scene minutes later with the N.C.I.C. printout and advised Sanders that the plaintiff was wanted in Texas and was considered armed and dangerous. Sanders observed similarities between the plaintiff and the description on the printout of Leonard Johnson, Jr. After making further inquiries, Sanders arrested the plaintiff and transported him to the State Police Troop E headquarters. The plaintiff was then taken to the Rapides Parish Sheriff's Office where he was fingerprinted and booked on a fugitive warrant from Bell County, Texas.
On April 20, 1981, after the plaintiff had spent six days in jail (including Easter weekend), Rapides Parish authorities received photographs and fingerprints of Leonard Johnson, Jr. They revealed that the plaintiff was not the wanted fugitive. The plaintiff was thereupon released.
On appeal, the plaintiff asserts that the trial court erred in finding that Trooper Sanders acted with probable cause in arresting the plaintiff. Further, the plaintiff asserts that the trial court erred in finding no negligence on the part of the State Police in failing to follow up on the arrest *106 of the plaintiff in order to confirm his identity.
False imprisonment occurs when one is arrested and restrained against his will by another who acts without a warrant or other statutory authority. It is restraint without color of legal authority. Kyle v. City of New Orleans, 353 So.2d 969 (La. 1977); Richard v. State, through Department of Public Safety, 436 So.2d 1265 (La.App. 1st Cir.1983), writ denied, 441 So.2d 1223 (La.1983). If a police officer acts pursuant to statutory authority in arresting and incarcerating a citizen, there is no false arrest or imprisonment. Kyle v. City of New Orleans, supra.
In the instant case, the authority for arresting the plaintiff is derived from LSA-C.Cr.P. Art. 213, which provides in pertinent part:
"A peace office may, without a warrant, arrest a person when:
. . . . .
(3) The peace officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
(4) The peace officer has received positive and reliable information that another peace officer from this state holds an arrest warrant, or a peace officer of another state or the United States holds an arrest warrant for a felony offense."
In the instant case, Trooper Sanders had reasonable cause (provided by the N.C.I.C. printout) to believe that an offense had been committed. LSA-C.Cr.P. Art. 213(3), supra. The printout also provided Sanders with positive and reliable information that an arrest warrant from the State of Texas was outstanding on Leonard Johnson, Jr., LSA-C.Cr.P. Art. 213(4). The determinative inquiry thus becomes whether Sanders had reasonable cause to believe that the man he had stopped for speeding was in fact Leonard Johnson, Jr.
The N.C.I.C. printout available to Trooper Sanders at the time of the arrest showed that Leonard Johnson, Jr. was a black male, 5' 8" tall, weighing 174 pounds, with brown eyes, black hair, and dark skin. It further showed that Leonard Johnson, Jr. had scars on the forehead, face, each arm, right leg, right foot, and near the left eye. The printout also showed that Leonard Johnson, Jr. was born on May 22, 1943.
The plaintiff, L.D. Johnson, is a black male, 5' 10" tall, weighing 180 pounds. The plaintiff's height and weight were not recorded on his drivers license, however, since the license was a temporary permit. The license did show L.D. Johnson's date of birth, May 22, 1943. Sanders noted a small scar over the plaintiff's left eye. Upon further inquiry, Sanders learned that the plaintiff had formerly lived in Texas. At this point, the plaintiff was arrested and taken to Troop E headquarters. Upon arrival there, Sanders observed a scar on one of the plaintiff's arms. The plaintiff was then taken to the Rapides Parish Sheriff's Office, where he was instructed to lower his pants. Sanders discovered a scar on one of the plaintiff's legs. At this point the plaintiff was fingerprinted and booked. The plaintiff at all times denied being Leonard Johnson, Jr.
Reasonable cause to believe the person arrested has committed an offense exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonable trustworthy information, are sufficient to justify an average man of caution in the belief that the person to be arrested has committed or is committing an offense. Richard v. State, through Department of Public Safety, supra; State v. Phillips, 347 So.2d 206 (La.1977). Whether reasonable cause exists is in the first instance a substantive determination to be made by the trial judge from the facts and circumstances of the case. State v. Drew, 360 So.2d 500 (La. 1978).
We find no error in the trial court's conclusion that reasonable cause to arrest the plaintiff existed. Beside the similarity in the names of the two men, the record shows that the plaintiff and the fugitive, *107 Leonard Johnson, Jr., share common physical characteristics. These similarities, coupled with the fact that the birth dates matched exactly, would lead a police officer of average caution to believe that the plaintiff was Leonard Johnson, Jr. We find that Trooper Sanders had reasonable cause to arrest the plaintiff.
Although we find that the arrest of the plaintiff was lawful, the record in the instant case raises a serious question as to whether the plaintiff's incarceration for six days as a result of a mistaken identification constituted a false imprisonment. The plaintiff contends that the State Police Officers involved in the plaintiff's arrest were negligent in failing to confirm the plaintiff's identity, resulting in the lengthy imprisonment.
The record shows that when the plaintiff was taken to the Rapides Parish Sheriff's Office, he was fingerprinted, photographed, and booked by Sheriff's Office personnel. Trooper Sanders testified that once the plaintiff was turned over to the Sheriff, his responsibility as the arresting officer was at an end. He stated that any further investigation into the identity of the plaintiff was the responsibility of the Sheriff. This testimony is corroborated by that of Walter Reynolds, the chief deputy of the Rapides Parish Sheriff's Office. Reynolds gave a detailed description of the procedure by which the Sheriff's Office extradites prisoners wanted in other states. The process includes the exchange of photographs and fingerprints between the law enforcement agencies to confirm the identity of the wanted suspect. Further, the record reflects that subsequent to the incarceration of the plaintiff in the Rapides Parish Jail, all further investigation into the identity of the plaintiff was conducted by personnel of the Rapides Parish Sheriff's Office.
LSA-C.Cr.P. Art. 229 provides:
"The officer in charge of the jail or police station shall immediately inform the prisoner booked:
(1) Of the charge against him;
(2) Of his rights to communicate with and procure counsel; and
(3) Of his right to request a preliminary examination when he is charged with a felony.
The officer in charge shall, within forty-eight hours from the time of the booking, notify the district attorney in writing of all persons booked for violation of state statutes, and shall furnish without cost a certified copy of any booking entry to any person requesting it."
LSA-C.Cr.P. Art. 230.1 provides:
"A. The sheriff having custody of an arrested person shall bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal holidays shall be excluded in computing the seventy-two hour period referred to herein.
B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The court may also, in its discretion, determine or review a prior determination of the amount of bail.
C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
D. The failure of the sheriff to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant."
The State Police Law, LSA-R.S. 40:1371 et seq., regulates the Division of State Police. LSA-R.S. 40:1383 provides:
"Any police employee of the division, in executing any warrant of arrest issued by any magistrate of the state or in making any other arrest, shall, immediately after the arrest, place the person arrested in the parish jail of the parish in which the arrest was made.
Whoever wilfully violates this Section shall be fined not more than twenty-five *108 dollars or imprisoned for not more than thirty days, or both."
LSA-R.S. 40:1384 provides:
"Any person having charge of a jail or other place of detention shall, provided sufficient facilities are available, receive any prisoner arrested by a police employee of the division and shall detain him in custody until otherwise ordered by a court, by the department, or by the police employee from whom the prisoner was received.
Whoever violates this Section shall be fined not more than twenty-five dollars or imprisoned for not more than thirty days, or both."
The foregoing provisions, together with the evidence adduced at trial, lead us to conclude that when plaintiff was arrested by Trooper Sanders as a wanted fugitive and transferred to the Rapides Parish Jail, the custody of the plaintiff as well as the responsibility for further investigation shifted to the Sheriff's Office. This conclusion appears to be in accord with both the legislative scheme of LSA-C.Cr.P. Arts. 229, 230.1 and LSA-R.S. 40:1371 et seq. and established custom. The trial court reached a like conclusion. Therefore, we find that if the detention of the plaintiff for a six day period without more positive identification constituted a false imprisonment, the responsibility for the delay lies with the Rapides Parish Sheriff's Department.
We observe that our decision is in accord with common law authorities which, while not binding us, provide persuasive support. In Alvarez v. Reynolds, 181 N.E.2d 616, 35 Ill.App.2d 54 (1962), the plaintiff was suspected of armed robbery and arrested by the defendant police officers. The plaintiff was then turned over to investigating detectives. Two days later, the plaintiff was released after establishing an alibi and passing a lie detector test. The court found that the arresting officers had probable cause to arrest the plaintiff, but that once the plaintiff was turned over to investigating detectives, their responsibility was at an end. Thus, the arresting officers could not be held liable for the lengthy imprisonment.
In the case of Plancich v. Williamson, 57 Wash.2d 367, 357 P.2d 693 (1963), officers of the Olympia police department received a complaint from an elderly man that the man's son, armed with two guns, had threatened to kill him. The officers went to the man's home and arrested his son. The arrested man was booked for investigation into his sanity. After being confined for thirteen hours in the city jail and fifty-two hours in the county jail, he was examined by a doctor who pronounced him sane, whereupon he was released without any formal charges being filed. He brought suit for false imprisonment against the arresting officers. The court found that the arresting officers had reasonable cause to arrest the plaintiff. The court refused to place the responsibility for the inordinate delay in releasing the plaintiff on the arresting officers. The court stated:
"It should be mentioned that in the afternoon, at about two o'clock p.m., following his arrest, respondent was transferred to the Thurston County jail where he was held for two days and then released. If, contrary to the conclusion we have reached, the arrest had been wrongful, perhaps the arresting officers would be liable for all damages suffered by the lengthy duration of imprisonment. 4 Am.Jur., Arrest, § 121. However, as we have already stated, we think the arrest was made on reasonable grounds. Liability cannot attach solely because of the obviously, unduly long detention. There must be some basis for placing the responsibility for the long detention, at least to some degree, on the appellant officers. The only finding by the trial court in this respect was that "plaintiff was deprived of his liberty by reason of his arrest by defendants for a period of three days without due process of law * * *." This finding or conclusion does not place clearly on the appellants any responsibility for the period Louis actually was confined and in the custody of the county authorities. So far as the findings *109 and the record show, appellants' responsibility with regard to respondent's arrest terminated when he was turned over to the county authorities for a mental examination."
We find the foregoing reasoning sound. The record in the instant case indicates that further investigation into the plaintiff's identity was the responsibility of the Rapides Parish Sheriff's Office. Any undue delay in confirming the identity of the plaintiff was not the responsibility of the State Police.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.
DOUCET, J., dissents.