467 So.2d 1335 (1985)
STATE of Louisiana
v.
Robert BOUDREAUX.
No. 84-KA-293.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1985.
*1336 Anderson Council, Kenner, for Robert Boudreaux, defendant-appellant.
William C. Credo, III, Asst. Dist. Atty., Gretna, for State, plaintiff-appellee.
Before BOUTALL, KLIEBERT and CURRAULT, JJ.
BOUTALL, Judge.
Robert Boudreaux was charged by bill of information with a violation of R.S. 14:64, armed robbery. The jury returned a verdict of guilty as charged. Following a presentence investigation, defendant was sentenced to 25 years at hard labor, the first five years to be served without benefit of parole, probation, or suspension of sentence.[1] This appeal followed.
Boudreaux raises several assignments of error for our review:[2]
1. The court committed prejudicial error in denying defendant's Motion to Suppress the Confession.
2. The court committed prejudicial error in denying the defendant's Motion for a New Trial.
3. The court committed prejudicial error in permitting the testimony, relative to, and introduction of, highly prejudicial evidence that had no probative value to the defendant's guilt or innocence, and which had no connexity to the defendant.
4. The court committed prejudicial error in permitting the introduction into evidence of the defendant's alleged confession.
5. The court committed error in imposing an excessive sentence which constituted cruel and unusual punishment under the facts and circumstances of the instant case.

FACTS
On the morning of November 19, 1982, two black males entered the B & C Supermarket on David Drive. The men went to the check-cashing window, where one of them asked for a money order. As the manager, Ronald Cuccio, walked toward the money window, one of the men put on a brown ski mask, pulled out a pistol, and pushed the manager into his office. The other man pulled a sawed-off shot gun out of his shirt and, after ordering the cashier and an employee and some customers to lie on the floor, took up a position at the front door.
The gunman in the manager's office forced Cuccio to fill up a sack with money and then struck Cuccio in the head with the pistol. Cuccio fell to the floor and pretended to be unconscious. The gunman left the office and approached the checkout register, apparently intending to remove its contents. However, the gunman watching the door yelled "Let's leave" because a car had pulled into the store's parking lot. Both gun men fled the store.
On December 1, 1982, a detective in the Kenner Police Department received an anonymous phone call from a person who apparently knew him informing him that Robert Boudreaux and Cornelius Dupard were the persons who robbed the B & C Supermarket. This detective relayed the information to the Jefferson Parish Sheriff's Office, where Detective Mike Guillory ran Boudreaux's name on the National Crime Information Center computer and discovered there was an outstanding warrant on Boudreaux for a 1977 theft charge. It was determined that Boudreaux was residing at the Texas Motel on Airline Highway.
*1337 Five days later, several Jefferson Parish officers staked out the Texas Motel with the intent of arresting Boudreaux on the outstanding warrant. Boudreaux and two male companions eventually pulled into the motel parking lot and were immediately arrested by the officers. The defendant and his companions were transported to the First District Police Station, where the defendant signed a waiver of his Miranda rights and confessed to taking part in the armed robbery of the B & C Supermarket. The defendant's companions were released.

ASSIGNMENTS OF ERROR
Initially we note that because the assignments reviewed are interrelated and bear a significant legal relationship to each other, we will consider them together instead of one by one. Appellant contests the admissibility of the confession on two grounds. The first ground is that the police lacked probable cause to arrest him and that the confession, being the fruit of an illegal arrest, should have been suppressed. The next ground is that the State failed to meet its burden of showing that the confession was knowingly and voluntarily made pursuant to R.S. 15:451 and La.C.Cr.P. art. 703.
An arrest, with or without a warrant, must be based upon probable cause. Probable cause exists "when the facts and circumstances within the arresting officer's knowledge and of which he has reasonable and trustworthy information are sufficient to justify a man of average caution in the belief that the person to be arrested has committed or is committing an offense." State v. Leatherwood, 411 So.2d 29, at 32 (La.1982). If the police had probable cause to arrest Boudreaux, then his confession was admissible, provided the State proved it was freely and voluntarily given. The information the police had at the time of the arrest included a tip from an anonymous informant and an outstanding warrant issued against Robert Boudreaux.
Appellant contends the State failed to produce evidence sufficient to establish the existence of the warrant. Detective Guillory testified at the suppression hearing he did not have the warrant when he arrested the defendant nor had he ever seen it. He stated having it in the computer "was enough". This warrant was not introduced into evidence at trial, although the arrest register on defendant admitted into evidence shows that defendant was arrested pursuant to an outstanding warrant.
There are cases which tend to hold that an arrest based on an outstanding warrant is legal, even if it is later established the warrant never existed. The rationale is derived from La.C.Cr.P. art. 213, which provides in pertinent part:
A person may, without a warrant, arrest a person when:
* * * * * *
(3) The police officer has reasonable cause to believe that the person to be arrested has committed an offense, although not in the presence of the officer; or
(4) The peace officer has received positive and reliable information that another peace officer from this state holds an arrest warrant, or a peace officer of another state of the United States holds an arrest warrant for a felony offense.
In State v. Pittman, 428 So.2d 979 (La. App. 1st Cir.1983), the Iberville Parish Sheriff's Department sent a teletype to the Baton Rouge City Police Department, advising them of a warrant for the arrest of Jerry Pittman for second degree murder. Acting upon this information, two police officers went to defendant's apartment. Receiving no response to their knocks, the police, seeing him asleep inside, entered the apartment through an unlocked upstairs window. Defendant was awakened, given Miranda warnings and arrested. The police also took custody of a knife and blood stained bandana. It was later learned that at the time of the arrest, no warrant existed. The trial court held the items seized at the time of the warrantless arrest were admissible since the arrest was based on probable cause. The evidence was admitted *1338 at trial. On appeal, the First Circuit cited art. 213 and explained:
Sections 3 and 4 specifically authorize the arrest of Jerry Pittman under the circumstances. A warrantless arrest must be based upon the arresting officer's reasonable belief that the person to be arrested has committed or is committing an offense. In the instant case the arresting officers received trustworthy information that Pittman was the person who had committed the homicide. This information was based on descriptions and a license number obtained from eye witnesses to the incident. The officers acted pursuant to a teletype which represented that an arrest warrant had been issued by authorities in an adjoining parish. There was probable cause for the officers to enter the house and make the warrantless arrest and seizure of evidence incident to the arrest.
Pittman, supra, at 982.
In Johnson v. State Department of Public Safety, 451 So.2d 104 (La.App. 3rd Cir. 1984) a state trooper received information from a National Crime Information Center (N.C.I.C.) printout that a man fitting the plaintiff's description, with the same name, was wanted by authorities in Bell County, Texas, on charges of aggravated prostitution. After holding the plaintiff in jail for six days, it was learned he was not the wanted fugitive. The plaintiff filed suit seeking damages for false imprisonment. On appeal, the Third Circuit upheld the trial court's determination that probable cause existed for the plaintiff's arrest, citing art. 213:
In the instant case, Trooper Sanders had reasonable cause (provided by the N.C.I.C. printout) to believe that an offense had been committed. LSA-C.Cr.P. art. 213(3), supra. The printout also provided Sanders with positive and reliable information that an arrest warrant from the State of Texas was outstanding on Leonard Johnson, Jr. LSA-C.Cr.P. art. 213(4).
Johnson, supra, at 106.
Perhaps dispositive of this issue is the recent case of U.S. v. Hensley, ___ U.S. ___, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In Hensley, police in a Cincinnati suburb issued a "wanted flyer" based on information obtained from an informant. Several days later Hensley was spotted and arrested in another suburb. Prior to the arrest, the officer who spotted Hensley radioed in to find out whether there was an outstanding warrant on the defendant. Two other officers heard this on the police radio and responded they thought Hensley was the subject of a wanted flyer. The same two officers later testified it was their experience that the issuance of such a flyer was usually followed by the issuance of an arrest warrant.
Significantly the opinion fails to reveal whether the arrest warrant actually existed. Also significant is the fact the police issued the flyer on the basis of information received from an informant, although the informant's tip in Hensley appears to be more detailed than the instant one. The court upheld Hensley's arrest, stating that the flyer was issued on the basis of "articulable facts supporting a reasonable suspicion that the wanted person has committed an offense." Obviously, the court felt the police acted legally in relying upon the reported existence of both the arrest warrant and the flyer.
We feel Hensley is apposite. Although the case turns more upon the law of investigatory stops, search, and seizure, it also recognizes the validity of an arrest made pursuant to an honest belief that an outstanding arrest warrant exists. Such is the situation here. The officers who arrested Boudreaux did so pursuant to their information concerning an outstanding arrest warrant. Even if the warrant did not exist, as discussed previously, article 213 authorizes a warrantless arrest when that arrest is based upon a reasonable belief that a person has committed an offense.
In summary, although the State may have failed to prove the existence of an outstanding warrant, especially since the warrant was not offered into evidence *1339 at trial, the arrest itself appears to be based on probable cause. It must be remembered that, in addition to the outstanding warrant, the police also acted pursuant to a tip from an undisclosed informant. Before concluding our discussion of this Assignment, we turn our attention to the second ground appellant raises concerning the admissibility of his confession.
Before the State may introduce a confession into evidence, it must prove beyond a reasonable doubt that the statement was "free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threat, inducements or promises." R.S. 15:451.
Moreover, where as here the defendant alleges police misconduct relative to the procurement of a confession, the State must specifically rebut those allegations. State v. West, 408 So.2d 1302 (La. 1982). On appellate review, the reviewing court may consider the evidence adduced both at the Motion to Suppress and at trial.
Boudreaux and the two men arrested with him testified at the suppression hearing and at trial that they did not resist arrest and did not try to fight the officers in any way. The defendant testified that after he was handcuffed and made to lie face down on the ground, he was hit twice with a gun, once on the head and once on the face. He stated the butt of the gun made a cut over his eye, which bled. The two men arrested with the defendant corroborated the defendant's testimony that he was roughed up immediately following his arrest.
None of the arresting officers testified at the suppression hearing. It was established there were at least three arresting officers; only one testified at trial. This was Officer Rooney,[3] who stated "When Mr. Boudreaux was taken out of the car he acted very violently, but he was subdued and there was nothing that I remember outstanding about it but he did fight at a certain point." Detective Guillory, who questioned defendant at the station, but did not participate in the arrest, testified when defendant was brought to the station he had dirt on his face and blood on his head. He also testified he got the defendant some water during the questioning and had one of the officers bring defendant a wet cloth to wipe his face and head. Sergeant Lamia, the other officer present during the questioning of the defendant at the station, testified at trial concerning defendant's physical condition: "... He had dirt to the left side of his face and a trickle of blood to the rear of his head".
Defendant also contends his confession was forced out of him by Detectives Guillory and Lamia in that they placed his right hand in a desk drawer and continually applied pressure to it during questioning. He claims his hand swelled as a result and even at the time of trial it still bothered him. Boudreaux testified he signed the Rights of Arrestee form just after he was allowed to take his hand out of the drawer and the questioning had ended. He claims none of the answers given in the statement were made by him.
Detectives Guillory and Lamia each took the stand and denied threatening or abusing the defendant in any way during the questioning. They were the only officers present during the questioning, and their testimony appears credible. Based on the testimony of both sides, we feel defendant's allegations concerning what happened to him once he arrived at the police station during questioning were specifically rebutted. However, the same cannot be said of the events following defendant's arrest, and up to the time he was brought to the station. The defendant and the two companions arrested with him all testified defendant was abused immediately after his arrest despite the fact he offered no resistance. None of the arresting officers testified at the suppression hearing and only one testified at trial, Detective Rooney. Most importantly, Rooney did not specifically rebut defendant's allegation of violence; *1340 rather, Rooney testified defendant had to be subdued before he was arrested. Additionally, Rooney testified he did not notice that defendant was bleeding about his head, a fact attested to by all of the officers and witnesses who came in contact with the defendant the night of the arrest.
We feel that at best, on the showing made both at the suppression hearing and at trial, the voluntariness of Boudreaux's confession is suspect. In other words, we cannot say the State specifically rebutted defendant's allegations of coercion. We feel it would have been a simple matter for the State to call the remaining two arresting officers to rebut defendant's allegations and the State's unexplained failure to do so considerably weakens the State's position on this point.
This is factually similar to the situations found in State v. Franklin, 381 So.2d 826 (La.1980) and State v. Davis, 380 So.2d 607 (La.1980) where only one of three officers accused of beating the defendant prior to the defendant confessing testified at either the Motion to Suppress or trial. In both cases, the court held the State failed to rebut the defendant's allegations of abuse. We see no reason why the principles applied in these cases should not be deemed applicable to the instant one. We are prepared to hold that the state has not borne its burden of showing this confession to be free and voluntary. We do not decide, however, that this alone is sufficient to necessitate a new trial, because Assignment No. 2 presents an equally serious ground for a new trial.
Assignment No. 2 attacks the refusal of the trial court to grant defendant's Motion for New Trial on another ground. The facts giving rise to this Motion are as follows:
During defendant's trial, the State established that the gun and ski mask used in the robbery of the B & C Supermarket had been found in the trunk of a car which had been rented from and returned to American International Rent-A-Car. An employee of the rental company, Freddie Estelle, testified that the car had been rented by "Cornelius Dupard," and that Dupard had stopped by and given him some money on the car. A few days later, the car was returned to the lot. (It was never made clear exactly how the car was returned, although it was mentioned in the transcript on the Motion for New Trial that the car had to be towed back to the rent-a-car place.) Estelle testified that Dupard appeared and asked for the keys to the car, but left without them after Estelle told him the keys were at the main office. The items connected with the robbery were discovered when the trunk was opened by personnel of the rental company.
On cross-examination Estelle was asked if he would recognize the person with whom the rental transaction occurred. Estelle identified the defendant, Robert Boudreaux, as the person who rented the car and returned for the keys.
The defendant took the stand and on cross-examination denied ever going to American International Rent-A-Car or speaking to Estelle.
In closing argument, the prosecutor argued the defendant, posing as Cornelius Dupard, rented the car and returned to the rental company to retrieve the gun and ski mask. Defendant was convicted.
Two months later, Estelle testified at the trial of Cornelius Dupard, who was also on trial for his participation in the armed robbery of the B & C Supermarket. Estelle identified Dupard as the man who rented the car and returned looking for the keys. When questioned about his prior inconsistent statement that Boudreaux had rented the car, Estelle admitted making a mistake earlier, stating "... I thought it [Robert Boudreaux] was Cornelius Dupard because that was what it was supposed to be about". Estelle went on to state he had never seen Boudreaux before Boudreaux's trial.
Shortly thereafter, defendant filed this Motion for a New Trial based upon the newly discovered evidence. La.C.Cr.P. art. 851. The transcripts of the proceedings in *1341 the Dupard case were presented at the hearing. Defense counsel correctly pointed out during the hearing that the testimony of Estelle, later found to be erroneous, was the only evidence connecting the defendant to the car in which the gun and ski mask used in the robbery were found.
The trial judge was convinced Estelle did give conflicting testimony in the two trials but denied the motion anyway, stating:
If this was the full element in the case that convicted him [Boudreaux], I would share Mr. Council's argument that there should be a new trial, but the main thrust of the conviction, in my opinion, was the confession of Mr. Boudreaux. Had that confession not been allowed or been before the jury, I think the circumstances would warrant a new trial, but I will not grant a new trial because of the confession being in evidence. (Emphasis added)
We are convinced the trial judge erred in denying the Motion for New Trial. The eye witnesses to the crime could not identify the defendant. His guilt is founded basically on 2 items of evidence: his confession and his identification by the rental employee. As we have already stated, the validity of the confession is placed in doubt by the State's failure to specifically rebut defendant's allegations of coercion. And, it cannot be emphasized enough that Estelle's testimony was the only evidence linking defendant to the rental car in which the gun and ski mask were found. Since Estelle completely changed his testimony in a later trial regarding who actually rented the car, we must set aside this conviction and remand for a new trial.
Accordingly, for the reasons set forth above, we set aside the conviction and sentence, grant to the defendant a new trial, and remand this case for further proceedings in accordance with the views expressed herein.
CONVICTION AND SENTENCE SET ASIDE AND REMANDED.
NOTES
[1] We take notice of the fact this sentence may not be compatible with R.S. 14:64. We will not review it, however, since other assignments of error are dispositive.
[2] In view of the disposition of Assignments No. 1, 4, and 2, Assignment No. 5 will not be considered. Also, Assignment of Error No. 3 was not briefed and therefore should be deemed abandoned. See Uniform RulesCourt of Appeal, Rule 2-12.4.
[3] Officer Rooney testified there were "at least two other officers besides myself"; defendant and his two companions claimed that at least six officers participated in the arrest.