565 So.2d 1023 (1990)
STATE of Louisiana
v.
Wortham Joseph JONES, Jr.
No. 89 KA 1509.
Court of Appeal of Louisiana, First Circuit.
June 26, 1990.
Rehearing Denied August 28, 1990.
Bernard E. Boudreaux, Dist. Atty., James R. McClelland, Asst. Dist. Atty., Franklin, for the State.
Wortham Jones, Franklin, in pro. per.
Before COVINGTON, C.J., WATKINS, J., and DOHERTY[*], J. Pro Tem.
*1024 WATKINS, Judge.
Wortham Joseph Jones, Jr., was charged by bill of information with armed robbery, in violation of LSA-R.S. 14:64. He was tried by a jury, which convicted him as charged. The trial court sentenced him to serve fifty years at hard labor, without benefit of probation, parole, or suspension of sentence. Representing himself on appeal, defendant urged five assignments of error, as follows:
1. Complete denial of the Fourteenth Amendment.
2. Complete denial of the Six[th] Amendment.
3. Malfeasance and unethical Practices in a court of law.
4. Major cover-up in regards to Art. 230.1 of the "Revised Statue of Criminal Code of Procedure" (sic).
5. Wanton of (sic) prosecution and total violation of Petitioners (sic) federally guranteed (sic) Constitutional right's (sic).
We are unable to determine from defendant's brief exactly which of these assignments of error he has maintained on appeal. In his brief, he advances the following claims:
1. The court erred by compelling him to represent himself without an explanation of the dangers and disadvantages of self-representation.
2. The court erred by forcing an attorney from the Indigent Defenders' Board to sit in and assist him.
3. The court erred by denying a continuance in order that he could obtain counsel.
4. The prosecutor's closing argument contained prejudicial error.
5. The court erred by accepting the state's identification evidence.
Defendant further requested that this Court review the record of the proceedings for patent error.[1]
The only arguments in defendant's brief that can be definitely linked to an assignment of error are defendant's claim that the court erred by requiring him to represent himself and his claim that the court erred by denying him a continuance to obtain counsel because these claims, if meritorious, would constitute an abridgment of defendant's Sixth Amendment right to the assistance of counsel. See LSA-C.Cr.P. art. 920, which provides that this court can consider on appeal only errors designated in the assignment of errors and errors discoverable by a mere inspection of the pleadings and proceedings. The other arguments are only tenuously linked to the designation of error contained in the record. Nevertheless, because of the peculiar procedural history of this appeal and in order to forestall an application for post-conviction relief, we hereby elect to consider the arguments advanced in defendant's brief as though they were properly raised. However, assignments of error not briefed on appeal are considered abandoned. Uniform RulesCourts of Appeal, Rule 2-12.4.

FACTS
Defendant was charged with the armed robbery of Helen Bennett, the cashier of the Canal Service Station in Patterson, Louisiana. The incident took place July 27, 1988, at approximately 10:00 p.m. The victim testified that defendant entered the station, armed with a shotgun and wearing sunglasses. Pointing the gun at her, he asked her to give him the money in the cash register. Ms. Bennett complied. When he left the store, she saw him turn to the left, towards a True Value Hardware Store.
Melanie Cox testified that she lived near the Canal Service Station and across the street from the True Value Hardware Store. She saw two black men sitting in a car in the parking lot of the hardware store. The store was closed for the evening, and it was dark. The car lingered in the parking lot for several minutes. Ms. *1025 Cox became suspicious and called the Patterson Police Department.
Officer Robert Thompson of the Patterson Police Department testified that he responded to Ms. Cox's telephone call. When he arrived at the parking lot of the hardware store, he saw a vehicle with one black male sitting in it, and he attempted to determine the whereabouts of the second black male. The occupant of the car approached him and told him that the car was running hot. As Officer Thompson briefly conversed with him, he saw a black male, whom he identified as defendant, walk rapidly from the Canal Service Station, carrying a shotgun and a bag. Apparently, defendant did not see the police unit, and he almost walked into Officer Thompson. After Officer Thompson ordered defendant to stop, he turned and began to walk away. On Officer Thompson's orders, he dropped the gun and the bag to the ground. Defendant then attempted to flee and hid behind the police car. He was eventually subdued when the officer fired a warning shot over the top of his head.
Defendant was arrested, and the bag and shotgun were recovered from the ground where Officer Thompson had seen him drop them. Officer Thompson determined that the gun was loaded. He opened the bag and found that it contained cash in the amount of $164.30. Shotgun shells similar to the shells in the gun were found in the car parked at the hardware store. At trial, the state introduced the gun, the money bag, the money, the shotgun shells, and the sunglasses defendant was wearing at the time of the arrest.
Defendant represented himself at trial. He did not cross-examine the state's witnesses, nor did he present evidence on his own behalf. In closing arguments to the jury, however, defendant claimed that someone else robbed the store and "I picked up what they throwed behind because they seen the Police. I didn't see `em."

DENIAL OF SIXTH AMENDMENT RIGHT TO COUNSEL
Defendant submits that he was denied his Sixth Amendment right to the assistance of counsel because the court forced him to represent himself at trial. He claims that he repeatedly advised the court that he had no desire to represent himself at trial and that he intended to hire his own counsel.
Defendant was arrested July 27, 1988. He appeared before the presiding City Court judge on August 1, 1988, and at that time, the Indigent Defender Board was appointed to represent him. Thereafter, the following events transpired:
AUGUST 15, 1988 Appearing before Judge Michael J. McNulty, Jr., defendant advised the court that his brother intended to hire counsel for him and that he had the funds to do so.
AUGUST 29, 1988 Represented by the Indigent Defender, defendant appeared in court for arraignment before Judge C. Thomas Bienvenu. Counsel entered a plea of not guilty and requested a jury trial. The state asked for a trial date of September 26, 1988. In proper person, defendant advised the court that he intended to retain his own counsel, and he requested a continuance of the trial. The Indigent Defender attorney advised the court that the board had filed a motion to withdraw upon defendant's representation that he intended to hire counsel. When questioned by the trial court, defendant stated that his family was attempting to obtain the representation of Ossie Brown, but plans were not yet final. The court continued the arraignment to September 19, 1988; the court instructed defendant to have his attorney enroll as counsel as soon as the arrangements were final.
SEPTEMBER 19, 1988 Defendant appeared without counsel for arraignment before Judge Anne L. Simon. He advised the court that he had retained counsel, Phyllis Southhall, and that she had instructed him how to plead. After defendant pled not guilty, the state asked that the matter be set for trial on October 31, 1988, and that counsel be notified.
*1026 SEPTEMBER 21, 1988 Defendant appeared without counsel for a hearing on a motion filed in proper person. The court advised defendant that the record did not show that he was represented. At defendant's request, the hearing on his motion was continued to October 12, 1988.
OCTOBER 12, 1988 Defendant appeared without counsel for a hearing on a motion to dismiss the charges, alleging excessive delay between arrest and his appearance before a judge for the appointment of counsel. The court noted that defendant had presented an unsigned motion prepared by an attorney and a handwritten motion prepared in proper person, both of which addressed the same complaint. The court heard testimony on the defendant's motion and thereafter denied said motion. The court advised defendant that further motions should be filed by his attorney. Defendant requested that the matter be set for trial.
OCTOBER 31, 1988 Defendant appeared without counsel for trial. Defendant confirmed that he did not desire representation by the Indigent Defender. He advised the court that he intended to retain Charles Makar and that Mr. Makar had prepared the motion alleging post-arrest delay. He claimed that he had no knowledge that the trial date of October 31, 1988, had been set at arraignment. Defendant claimed that he had given a partial retainer to Mr. Makar and that he was attempting to obtain the rest of the retainer amount. The court then recessed the proceedings to contact Mr. Makar. Thereafter, the court notified defendant that Mr. Makar had stated he did not represent him because defendant had not paid the retainer fee. The court then continued the trial to November 28, 1988. The court asked defendant again if he refused the Indigent Defender, and defendant stated that he did. The court then notified defendant that he must be ready for trial on November 28, represented by Mr. Makar, another attorney, or by himself. The court set a hearing for November 10, 1988, to determine defendant's counsel status.
NOVEMBER 10, 1988 Defendant appeared in court without an attorney. He advised the court that Mr. Makar represented him, but he was unable to appear for the hearing because of a scheduling conflict. The court requested that the docket clerk contact Mr. Makar. After the call, the court advised defendant that Mr. Makar had stated that he did not represent defendant and that he would not enroll as counsel until the retainer was paid. Defendant advised the court that he was ready for trial, and he assured the court that Mr. Makar would be paid the retainer fee before the trial date. He further advised the court that, in the alternative, he would be represented by Edselle Cunningham, who was representing him on another matter. The court questioned defendant about his age, educational background and his work history. Defendant advised the court that he was 43 years old, that he had attended business college for two years, and that he was a computer operator for the Department of Education at the time of his arrest. He also claimed that he was an employee of the Division of Administration. Defendant further advised the court that he had had experience in the criminal area and that he was familiar with many of the basic concepts and laws. The court scheduled a second hearing to determine defendant's status on November 23, and it instructed defendant to request that his attorney enroll as counsel as soon as representation was secured.
NOVEMBER 23, 1988 Defendant appeared in court without counsel. He advised the court that he was in the process of obtaining funds to retain Edselle Cunningham. He gave the court a telephone number to verify that he had a brother with the C.I.A. in Germany and that his brother would make funds available. He claimed that, for security *1027 reasons, he was unable to explain the connection between the person at the telephone number and his brother. He then told the court that he needed the money to retain Charles Makar. The court pointed out that only five days remained before trial and that an attorney might find that amount of time to be insufficient. Defendant assured the court that he had spoken to Mr. Cunningham who would represent defendant at trial on November 28, (if Mr. Makar were unavailable). The court asked defendant if he intended to represent himself if neither attorney was present, and defendant informed the court that he did not. The court pointed out that defendant was creating an impasse by his failure to obtain counsel, and defendant assured the court that he did not intend to let that happen. Defendant promised the court that he would have an attorney on November 28. The state moved to continue the proceedings to December 5, and defendant objected on the grounds that his attorney would be able to attend court on November 28. Defendant again rejected the representation of the Indigent Defender.
NOVEMBER 30, 1988 Defendant appeared in court without counsel for a status hearing to determine whether or not he was represented by counsel. The court advised him that the trial had been continued because, on the date it was scheduled, no one was in court to represent him. Defendant told the court that he had not told Mr. Cunningham of the trial date because he had hoped to hear from his brother in Germany concerning the money to retain Mr. Makar. The court again explained that defendant could represent himself at trial, defendant could obtain representation of the Indigent Defender, or he could retain his own attorney. Defendant rejected representation by the Indigent Defender and again advised the court that he intended to secure his own attorney. In light of defendant's failure to secure counsel, the state requested a continuance to January 23, 1989. The court advised defendant that, if he were unable to secure counsel, he should be ready to represent himself. The court instructed defendant to ask his attorney to file a motion to enroll as soon as representation was secured.
JANUARY 10, 1989 Defendant appeared in court without an attorney. Defendant assured the court that he was taking all necessary steps to obtain his own attorney. The court appointed the Chief Indigent Defender to provide assistance at defendant's request.
JANUARY 23, 1989 The state moved to continue the case for two days. No attorney was present to represent defendant.
JANUARY 24, 1989 The court called defendant before the bench to advise him that his case was scheduled for the following day and that no attorney had been in court to represent him on the scheduled trial date. The court asked defendant if he were prepared to represent himself, and defendant replied that he was not. Defendant asked for another continuance in order to secure the representation of counsel. The court advised him that the trial would begin the following day.
JANUARY 25, 1989 Defendant appeared in court without an attorney. The court asked if he needed materials to assist in his defense. Defendant advised the court that he had had insufficient time to prepare for trial and requested a continuance. The court asked defendant to waive his right to a speedy trial, and he refused to do so. The state initially objected to a further continuance and noted that it believed defendant was attempting to manipulate the criminal justice system. Defendant denied the state's allegation. The state agreed to continue the trial until February 21, 1989, and defendant waived his right to a speedy trial until he obtained counsel. The court advised defendant that he should begin preparing to try the case.
*1028 FEBRUARY 16, 1989 Defendant was brought in court. The court advised him that it had received a telephone call from Mr. Cunningham, who informed the court that he did not represent defendant in the criminal matter and that he did not intend to do so. Defendant advised the court that his brother was attempting to obtain the representation of either Alex Wall or Ossie Brown. The court asked defendant if he were prepared to represent himself if he were unable to secure counsel by the scheduled trial date, and defendant refused to answer. The court advised defendant that the state intended to try him with or without counsel.
FEBRUARY 21, 1989 Defendant appeared in court without an attorney. He advised the court that Mr. Edward Harris had told him that "he would be more than willing" to represent him if a settlement could be reached with defendant's sister-in-law. The court advised defendant that the trial would be held that day. The court asked defendant whether or not he had ever observed a criminal trial, and he replied that he had done so. He advised the court that he had never been involved in a trial before. The court recessed the proceedings to contact Mr. Harris. It then advised defendant that Mr. Harris informed him that he did not represent defendant, that he did not intend to represent defendant, that he did not practice criminal law, and that he would not consider representing a client in a criminal courtroom. The state objected to a further continuance and expressed its readiness for trial. The court advised defendant that it would have continued the trial if it believed that defendant would secure means to retain an attorney. The court informed defendant that it believed defendant was attempting to avoid trial by the continuous delays and denied defendant's motion for a continuance. Before the trial began, the court advised defendant of his right to question prospective jurors during voir dire, to question the state's witnesses during the trial, and to present his own witnesses. At the request of the Indigent Defender, the court relieved that office of its representation, but requested that a representative be present in the courthouse during the trial in the event that defendant changed his mind about the representation of that office. The trial was then begun.
Our state constitution provides that "every person is entitled to assistance of counsel of his choice, or appointed by the court if he is indigent and charged with an offense punishable by imprisonment." La. Const. Art. I, § 13; City of Baton Rouge v. Dees, 363 So.2d 530, 531 (La. 1978). Absent a knowing and intelligent waiver, no defendant may be imprisoned if he was not represented at trial by counsel. City of Baton Rouge v. Dees, supra; State v. McGowan, 359 So.2d 972 (La.1978).
In State v. McGowan, the Louisiana Supreme Court noted that an implicit waiver of counsel might result where a defendant who is clearly able to secure retained counsel persists in demanding court appointed counsel and desists from employing an attorney despite the opportunity to do so. 359 So.2d at 974. In City of Baton Rouge v. Dees, the court further noted than an accused's unquestioned right to legal representation at trial cannot be manipulated by him to secure unwarranted delays or otherwise obstruct the orderly administration of justice. 363 So.2d at 531.
In State v. Harper, 381 So.2d 468 (La. 1980), the court was presented with a case very similar to the instant proceeding. Therein, the defendant rejected the appointment of the Indigent Defender, advised the court that he did not wish to represent himself, and requested that he be supplied with counsel from the American Civil Liberties Union. The trial court advised him that it could not appoint that organization and that defendant must either secure his own counsel, defend himself, or be content with appointed counsel. The court appointed the Indigent Defender to provide defendant with whatever assistance he desired. *1029 On the day of trial, the defendant appeared in court without having retained his own attorney. He again rejected the appointed counsel from the Office of the Indigent Defender on the grounds that the attorney had been implicated in some type of conspiracy, and he repeated that he did not wish to represent himself. Despite his complaints, the trial was begun. The attorney from the Indigent Defender was present to assist the defendant but did not participate in the trial. The defendant "made a number of objections, none of which showed much appreciation of the legal issues involved." He was convicted of four counts of simple burglary and appealed through appointed counsel, urging that he was denied his right to the assistance of counsel. The court noted as follows:
As a general proposition a person accused in a criminal trial has the right to counsel of his choice. State v. Leggett, 363 So.2d 434 (La.1978); State v. Mackie, 352 So.2d 1297 (La.1977); State v. Anthony, 347 So.2d 483 (La.1977). If a defendant is indigent he has the right to court appointed counsel. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); Argersinger v. Hamlin, [407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972)]; State v. Adams, 369 So.2d 1327 (La.1979); City of Baton Rouge v. Dees, 363 So.2d 530 (La.1978). An indigent defendant does not have the right to have a particular attorney appointed to represent him. State v. Rideau, 278 So.2d 100 (La.1973). An indigent's right to choose his counsel only extends so far as to allow the accused to retain the attorney of his choice, if he can manage to do so, but that right is not absolute and cannot be manipulated so as to obstruct orderly procedure in courts and cannot be used to thwart the administration of justice. State v. Jones, 376 So.2d 125 (La.1979); State v. Leggett, supra; State v. Mackie, supra.
381 So.2d at 470-471.
The Harper court found no error in the trial court's refusal to appoint another attorney or to require the defendant either to represent himself or to accept the assistance of the appointed counsel. The court then concluded that the defendant's refusal without good cause to proceed with able appointed counsel amounted to a waiver of his right to the assistance of counsel despite the defendant's repeated claims that he did not wish to proceed in proper person. Citing Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461, 1466 (1938), the court noted that the determination of whether or not there has been an intelligent waiver of the right of counsel "must depend, in each case, upon the facts and circumstances surrounding the case, including the background, experience, and conduct of the accused." The court continued as follows:
Expressed more colloquially, it must be determined if the defendant made his decision to forego his rights "with eyes open." Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268, 275 (1942). There is no particular formula which must be followed by the trial court in determining if the defendant has waived his rights. See e.g., Maynard v. Meachum, [545 F.2d 273 (1st Cir.1976)]. A defendant need not have the skill and knowledge of a lawyer in making his decision, but he must be aware of the dangers and disadvantages of self representation. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
Herein, as in State v. Harper, we are convinced that defendant's conduct amounted to a waiver of his right to the assistance of counsel. Unfortunately, it does not appear from the transcripts that defendant was questioned under oath; nevertheless, it is clear that on numerous occasions he deliberately misled the court regarding his attempts to retain counsel. The only explanation defendant gave concerning his repeated rejections of the appointment of counsel from the office of the Indigent Defender was that he believed he would be better off representing himself. We find that claim insufficient cause to conclude that defendant's desire for retained counsel surmounted the court's interest in the orderly administration of justice. From the strength of the state's evidence *1030 and defendant's conduct before the court, it is clear that defendant would have been well-advised to accept the appointment of that office.
The record before us reflects that both the court and the state were extraordinarily patient with defendant and did everything possible to accommodate him. Defendant was repeatedly instructed to prepare himself for trial if he were unsuccessful in his attempt to secure outside representation. He was well aware of the impasse his actions created. We agree with the trial court that defendant's actions constituted a deliberate attempt to avoid trial.
Defendant was undoubtedly aware of his right to court-appointed counsel, and he repeatedly rejected that assistance. Counsel was available to defendant before trial to render whatever assistance defendant requested. Although the Indigent Defender was not present in the courtroom throughout the trial, the court made it very clear to defendant that a representative would be available at any time during the trial if he elected representation.
Accordingly, after a careful examination of the record, we conclude that defendant's decision was made with the knowledge that appointed counsel was readily available to him. We find, therefore, that his refusal to accept the assistance of appointed counsel was a knowing and voluntary waiver of his right to the assistance of counsel. Accordingly, we find no merit to defendant's claim that his Sixth Amendment right to the assistance of counsel was abrogated by the court's action requiring him to represent himself at trial.
In defendant's second argument, he claims that the court erred "in compelling an attorney to sit in and assist him and accept an attorney he did not want from the Indigent Defenders Board." Before the trial began, defendant was made aware that a representative of the Office of the Indigent Defender would be available to him at any time during the trial. However, no one from that office sat in the courtroom against defendant's wishes.
In his third argument, defendant claims that the court's refusal to grant a continuance on the date of trial also violated his right to effective counsel. The record clearly reflects that defendant's motion for a continuance was a continuation of his attempt to manipulate the court. The granting of a continuance is within the sound discretion of the trial judge. LSA-C.Cr.P. art. 712. Whether or not a refusal to grant a continuance is justified depends upon the circumstances of the individual case. State v. Mackie, 352 So.2d 1297 (La. 1977). We find no abuse of discretion herein.

IMPROPER CLOSING ARGUMENT
In defendant's fourth argument, he submits that the state committed reversible error by advising the jury "to consider only one verdict, Guilty." He claims the state invaded the province of the jury by advising the jurors not to consider any of the responsive verdicts.
LSA-C.Cr.P. art. 774 provides for the scope of closing argument, in pertinent part, as follows:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The state's argument that "when you apply your reason and common sense to the evidence that you heard in the Courtroom today, you will find that there is no reasonable doubt, the defendant is guilty as charged" is a conclusion that the state was entitled to draw from the evidence and, therefore, was within the scope of proper closing argument. The jurors were instructed on the responsive verdicts by the trial court, and they were made aware of the elements of each verdict. Accordingly, we find no merit to this assignment of error.

IDENTIFICATION EVIDENCE
In defendant's fifth argument, he submits that he was denied his right to due process because of the likelihood that the victim's identification evidence was the product of impermissible suggestion. Defendant *1031 further complains that he was not permitted to participate in a lineup, which would have provided an accurate and proper means of identification.
At trial, the victim positively identified defendant as the perpetrator; however, she was unable to describe the perpetrator's attire. In his brief, defendant claims only that the identification was suspect because the victim was unable to describe his clothing; he does not set forth a specific manner in which he found that the procedure itself was suggestive. Moreover, Officer Thompson testified that, as soon as he arrested defendant for the robbery, he transported defendant to the Patterson Police Department. Neither he nor the victim indicated that the victim participated in a pretrial identification procedure. Since the victim made no pretrial identification of defendant, we find no merit to his claim that the identification procedure was suggestive.[2] See State v. Franklin, 381 So.2d 826 (La.1980).
With regard to defendant's claim that he should have been identified through a lineup, we note that defendant did not file a motion to compel a lineup. In any event, both state and federal courts have held that there is no constitutional right to a lineup. See State v. Boettcher, 338 So.2d 1356 (La.1976). The lack of a pretrial identification is generally a matter which addresses itself to the weight of a witness's testimony rather than to its admissibility. See Franklin, 381 So.2d at 827, n. 1.
Finally, we note that, even if suggestive identification procedures are proven by the defense, it is the likelihood of misidentification and not the mere existence of suggestiveness which violates due process. State v. Williams, 375 So.2d at 369. Herein, Officer Thompson was in the area because he had been alerted to possible criminal activity. As he investigated the report of suspicious circumstances, he saw defendant holding a shotgun and carrying a bag of money. Defendant was arrested as he attempted to flee. The victim testified that the man who robbed her wore sunglasses, carried a shotgun, and took a bag of money. Defendant was wearing sunglasses when he was apprehended, and he carried a shotgun and a bag of money. Officer Thompson positively identified defendant as the man whom he saw with the gun and the bag, and the victim positively identified defendant as the man who committed the robbery. Hence, we find no likelihood of misidentification and no due process violation. This argument has no merit.
For the reasons set forth above, the conviction and sentence of defendant are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[*] Judge Lewis S. Doherty, III, retired, is serving as judge pro tem by special appointment of the Louisiana Supreme Court to fill the vacancy created by the temporary appointment of Judge Melvin A. Shortess to the Supreme Court.
[1] This court routinely reviews each appellate record for the existence of error patent. Our examination of this record has not revealed such error.
[2] Defendant does not claim that the victim's in-court identification was tainted because he was the only possible suspect in the courtroom. See e.g., State v. Williams, 375 So.2d 364 (La. 1979). In any event, as in Williams, the victim's testimony established that the in-court identification was based on her confrontation with defendant during the robbery.