517 So.2d 1131 (1987)
STATE of Louisiana
v.
Ernest C. CROOK.
No. 87-KA-371.
Court of Appeal of Louisiana, Fifth Circuit.
December 8, 1987.
John M. Mamoulides, Dist. Atty., William C. Credo, III, Dorothy A. Pendergast, Asst. Dist. Attys., Gretna (Louise Korns, of counsel), for plaintiff-appellee.
Bruce G. Whittaker, Indigent Defender Bd., Gretna, for defendant-appellant.
Before KLIEBERT, WICKER and GOTHARD, JJ.
*1132 KLIEBERT, Judge.
Ernest C. Crook appeals his conviction and sentence of life imprisonment for the aggravated rape of his eight year old niece, a violation of LSA-R.S. 14:42. Appointed-indigent counsel assigns four errors; Crook, appearing pro se, assigns six.[1] We have considered all assignments of error and affirm the conviction and sentence.

FACTS
In June of 1986, during the course of a videotaped interview conducted by Detective Sam Buhler, eight-year-old "Liza" indicated that her uncle, Ernest Crook, fondled her and engaged in vaginal and anal intercourse with her on several occasions in 1984 and 1985. A physical examination by a pediatrician revealed Liza had been penetrated vaginally and anally on multiple occasions by a blunt object, a finding consistent with intercourse. Accidental trauma, disease, and congenital defect were discounted as causes of the condition.
Crook, who had moved to Sumner, Washington, was arrested by Pierce County authorities pursuant to a warrant issued by a Jefferson Parish judge. During an interview at the Pierce County Correctional Center Crook told Detective Buhler that he had fondled Liza and placed his penis on her vagina but did not engage in intercourse. In a subsequent statement after extradition to Jefferson Parish Crook reiterated his earlier statement and further denied engaging in anal intercourse with Liza. The videotape and inculpatory statements were introduced at trial, as was the testimony of Liza, the pediatrician and Detective Buhler.

THE BOND REDUCTION ISSUES
In his first and second assignments counsel contends the trial judge erred when making certain evidentiary rulings during a pre-trial bond reduction hearing. The state correctly notes errors committed during the bond reduction hearing had no impact on the trial before the jury, and on appeal after conviction pre-trial bail related issues are moot. State v. McCloud, 357 So.2d 1132 (La.1978); State v. Passman, 345 So. 2d 874 (La.1977). Counsel's appropriate means of review was to invoke this court's supervisory jurisdiction at the time the trial judge refused to reduce bail. La.C.Cr.P. art. 322; State v. Jones, 332 So.2d 267 (La.1976).
Assignments of error numbers 1 and 2 are meritless.

THE ADMISSIBILITY OF CROOK'S INCULPATORY STATEMENTS
The statements at issue are a document, handwritten by Detective Buhler and signed by Crook, memoralizing a series of questions and answers while in Pierce County and a transcript of a tape recording of a series of questions and answers after Crook's extradition to Jefferson Parish. The trial judge denied a motion to suppress the statements. In his third assignment counsel contends the statements should have been suppressed because the state failed to specifically rebut Crook's allegations he was not advised of his right to have counsel present and was coerced into giving the statement.
Before a confession or inculpatory statement may be introduced into evidence the state must prove beyond a reasonable doubt that the statement was free and voluntary and not made under the influence of fear, duress, intimidation, threats, inducements or promises. LSA-R.S. 15:451; La. C.Cr.P. art. 703; State v. Jackson, 414 So.2d 310 (La.1982). If the statement was elicited during custodial interrogation the state must also show the defendant was advised of his Miranda rights. State v. Narcisse, 426 So.2d 118 (La.1983). Allegations of specific instances of police misconduct in reference to a statement must be specifically rebutted; the state may not rely on general disclaimers of inducements or promises. State v. Serrato, 424 So.2d *1133 214 (La.1982); State v. Petterway, 403 So. 2d 1157 (La.1981).
During the suppression hearing Detective Buhler testified he informed Crook of his right (1) to remain silent, (2) to speak with an attorney, (3) to appointed counsel if he could not afford to retain counsel; and, (4) to stop answering questions at any time he desired, before soliciting the Pierce County statement. Detective Buhler read a "Rights of Arrestee" form to Crook detailing the above enumerated rights before the Jefferson Parish statement was solicited; Crook signed the waiver of rights portion of the form. The first series of questions and answers on both statements are a recitation of these rights with accompanying affirmative acknowledgments by Crook that he understood and wished to waive them and was voluntarily making the statements without pressure or coercion of any kind. Detective Buhler testified Crook did not ask to have an attorney present and was not coerced or influenced in any manner.
According to Crook, Detective Buhler told him counsel could not be present until after he gave the statements, and Detective Buhler threatened to arrest his wife for bigamy and place his children in a foster home if he did not make the statements. Crook also claimed the "Rights of Arrestee" form was completed after he gave the Jefferson Parish statement; however, when confronted with the fact the form was completed at 7:58 A.M. and the statement at 8:12 A.M., Crook admitted the form was completed before the statement was taped. Crook "didn't remember" his answers to the questions propounded in Pierce County.
Counsel's contention that the state failed to specifically rebut Crook's allegations is apparently predicated on the state's decision not to call Detective Buhler in rebuttal after Crook testified at the suppression hearing. However, the state need not wait until after the defendant's case-in-chief to meet allegations, but may anticipatorily rebut a defendant's allegations. State v. Vessell, 450 So.2d 938 (La.1984); State v. Thomas, 461 So.2d 1253 (La.App. 1st Cir. 1984) writ denied 464 So.2d 1375 (La.1985). Detective Buhler's testimony in the state's case in chief did rebut defendant's allegations. This is not a situation where the state failed to call witnesses who were present during the interrogation and who could have specifically rebutted defendant's allegations. See e.g. State v. Hills, 354 So.2d 186 (La.1977). Moreover, at trial Detective Buhler testified Crook was informed of his right to have counsel present before making the statements and no threats were made against Crook's wife and children. This court, in reviewing the denial of a motion to suppress, may review evidence produced at the motion hearing as well as evidence produced at trial on the merits. See State v. Phillips, 444 So.2d 1196 (La.1984); State v. Boudreaux, 467 So.2d 1335 (La.App. 5th Cir.1985).
The trial judge faced with contradictory testimony during the suppression hearing, made a credibility choice. The court disbelieved Crook's version of events and accepted Detective Buhler's. Credibility determinations are within the sound discretion of the trier of fact, are entitled to great weight, and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, supra. After reviewing the suppression hearing and the trial testimony, we discern no reason to disturb the factual findings of the trial court.
This assignment of error is meritless.

THE ADMISSIBILITY OF THE VIDEOTAPE
In the videotape recorded by Detective Buhler during the initial interview Liza described the various sex acts committed by Crook and utilized anatomically correct dolls to demonstrate the manner in which the acts were accomplished. The state, over a blanket objection by defense counsel, opened its case in chief by showing the tape to the jury and thereafter calling Liza as its first witness. In his fourth assignment counsel contends the trial judge erred in overruling the objection to the introduction of the videotape because the state failed to comply with the requirements of *1134 LSA-R.S. 15:440.4 and 15:440.5 before offering it into evidence.
As noted by the state, the grounds for an objection must be stated when the objection is made so the trial judge has an opportunity to make the proper ruling and prevent or cure an error. La.C.Cr.P. Art. 841; State v. Jackson, 450 So.2d 621 (La.1984). Failure to specify the ground for an objection should prevent counsel from raising the issue on appeal. State v. Henry, 449 So.2d 486 (La.1984); State v. Salgado, 473 So.2d 84 (La.App. 5th Cir.1985) writ denied 478 So.2d 1233 (La.1985). However, in the interest of justice the issue should be addressed in the present case in that the state erroneously said the basis for admissibility of the tape was LSA-R.S. 15:283. Also, LSA-R.S. 15:440.4 and 15:440.5 set forth specific requirements which must be met and established by the state if a videotape is to be competent and admissible evidence. The state made no attempt to establish the requirements had been met before showing the tape to the jury. As defendant lodged an objection to the procedure, albeit a blanket objection, we have misgivings about dismissing this assignment without addressing the merits of the issue raised.
In response to defendant counsel's objection at trial the state averred the tape was admissible under LSA-R.S. 15:283, which provides in pertinent part:
A. On its own motion or on the motion of the attorney for any party, a court may order when justice so requires that the testimony of a child under fourteen years of age who may have been physically or sexually abused be taken in a room other than the courtroom and be simultaneously televised by closed circuit television to the court and jury. The only persons who may be present in the room with the child are the person or persons operating the audio-video equipment, the presiding judge, the attorneys for the state and defendant, the defendant, and any person, other than a relative of the child, whose presence is determined by the court to be necessary to the welfare and well-being of the child during his testimony. Only the attorneys, or the presiding judge as authorized by law, may question the child.
The state's argument that LSA-R.S. 15:283 was applicable is obviously erroneous, for this was not a situation where the victim testified via closed circuit television, but rather a situation where a pre-recorded statement given by the victim months before trial was introduced into evidence. The statutes which authorize the recordation and admission of pre-recorded statements are LSA-R.S. 15:440.1 et seq.
LSA-R.S. 15:440.4 provides in part:
A. A videotape of a child fourteen years of age or under may be offered in evidence either for or against a defendant charged with the rape or physical or sexual abuse of a child. To render such a videotape competent evidence, it must be satisfactorily proved:
(1) That such electronic recording was voluntarily made by the victim of the physical or sexual abuse.
(2) That no relative of the victim of the physical or sexual abuse was present in the room where the recording was made.
(3) That such recording was not made of answers to interrogatories calculated to lead the child to make any particular statement.
(4) That the recording is accurate, has not been altered, and reflects what the witness or victim said.
(5) That the taking of the child's statement was supervised by a physician, a board-certified social worker, a law enforcement officer, a licensed psychologist, or an authorized representative of the Department of Health and Human Resources.
LSA-R.S. 15:440.5 provides in part:
A. The videotape of an oral statement of the child made before the proceeding begins may be admissible into evidence if:
(1) No attorney for either party was present when the statement was made;
(2) The recording is both visual and oral and is recorded on film or videotape or by other electronic means;
(3) The recording is accurate, has not been altered, and reflects what the witness or victim said;

*1135 (4) The statement was not made in response to questioning calculated to lead the child to make a particular statement;
(5) Every voice on the recording is identified;
(6) The person conducting the interview of the child in the recording is present at the proceeding and available to testify or be cross-examined by either party;
(7) The defendant or the attorney for the defendant is afforded an opportunity to view the recording before it is offered into evidence; and
(8) The child is available to testify.
The jurisprudence uniformly indicates that videotapes recorded pursuant to LSA-R.S. 15:440.4 are not competent evidence until the state proves "satisfactorily" that the conditions of the statute are met. See State in the Interest of R.W. v. J.L.W., 491 So.2d 652 (La.App. 2nd Cir.1986); State v. Feazell, 486 So.2d 327 (La.App. 3rd Cir. 1986). The jurisprudence similarly indicates that the requirements of LSA-R.S. 15:440.5 must be satisfied before the videotape may be admitted into evidence. See State v. R.C., 494 So.2d 1350 (La.App. 2nd Cir.1986); Matter of Fox, 504 So.2d 101 (La.App. 2nd Cir.1987); State v. Navarre, 498 So.2d 194 (La.App. 1st Cir.1986).
Here the state made no attempt to establish that the provisions of LSA-R.S. 15:440.4 and 15:440.5 were met before introducing the videotape into evidence and showing it to the jury. Following the presentation of the tape the state put the minor victim on the stand. She was examined by the state and cross-examined by the defendant as to the truth of the statements given on the tape. Also, the state subsequently called Detective Buhler to the stand and he identified the videotape as that which he recorded on June 9, 1986. The prosecutor did not solicit further details from the detective regarding the circumstances attendant to the recordation of the videotape and whether the tape accurately reflected what the victim said. Defense counsel's specific arguments are that an unidentified third person briefly appears at the beginning of the tape who may or may not have been a relative of Liza's or an attorney representing the state or the accused, and the state failed to prove that the recording was accurate and the tape had not been altered.
We have viewed the tape. We see no evidence of it being altered and the third party who entered the room with Detective Buhler apparently left before the statement was solicited from Liza. Further, after the statement was taken from Liza Detective Buhler videotaped an interview with Liza's mother.[2] During the course of the interview the third party was identified as Christie Waters, an officer assigned to the Juvenile Division of the Jefferson Parish Sheriff's office. Although it would certainly be better form for the state to directly address the proof of competency and admissibility, considering the entire record here and the tape itself, there is sufficient evidence showing the tape was competent evidence and admissible.
We have also reviewed the assignments of error asserted by Crook on his own behalf and found them to be meritless. Additionally, we have examined the record for errors patent and found none.
For the reasons stated therefore we affirm the defendant's conviction and sentence.
AFFIRMED.
NOTES
[1] After the case was submitted Crook filed a pleading entitled "Motion for Dismissal of Pro Se Brief without Prejudice to Petitioner".
[2] This portion of the videotape was not shown to the jury.