623 So.2d 204 (1993)
STATE of Louisiana, Appellee,
v.
Robert Dewayne GRANT, Appellant.
No. 25117-KA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 1993.
*205 Daryl Gold and Wayne Blanchard, Shreveport, for appellant.
Richard Ieyoub, Atty. Gen., Paul Carmouche, Dist. Atty., W. Stanley Lockard, Asst. Dist. Atty., Shreveport, for appellee.
Before MARVIN, BROWN and WILLIAMS, JJ.
BROWN, Judge.
Defendant, Robert Grant, was convicted of second degree murder and sentenced to life imprisonment at hard labor, without benefit of parole, probation or suspension of sentence. Because another man, Terry Mays, actually fired the shot that killed the victim, defendant argues on appeal that the evidence was insufficient to prove that he was a principal to the crime.

FACTS
On April 20, 1989, the victim, Keith Foster, drove with a friend, Ervin Ford, from Marshall, Texas, to Shreveport to find "Big Boy" and purchase cocaine. At approximately 1:00 a.m., Foster and Ford stopped their vehicle near an intersection in the Mooretown area of Shreveport where they encountered Grant, Mays and Wendell Leshay. Grant, Mays and Leshay had been drinking alcohol. After a brief conversation concerning drugs, Foster and Ford left and drove around the block; however, they returned and asked the three men if they knew "Big Boy." Grant and Mays walked over to Foster, who was driving the car, while Leshay moved to the rear of the automobile.
Grant indicated to Foster that he had drugs for sale. Grant was leaning inside the driver's window to show some "match boxes" supposedly containing crack cocaine when he turned off the engine and removed the ignition key. As Grant backed away from the window, Mays pulled a sawed-off shotgun out of his pants, pointed it at Foster and demanded money. Both Foster and Ford gave Mays their money. Mays then shot Foster in the left side of his neck. After the shooting, Grant, Mays and Leshay fled the scene. This appeal is premised upon the exact moment Grant started running from the scene and its significance in determining his participation. Grant claims he was guilty of simple robbery when he reached into the car and took the keys but that he was not part of the armed robbery and murder because he ran as soon as he saw Mays pull the shotgun from his pants.[1]

*206 DISCUSSION

Second degree murder is the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of armed robbery or simple robbery, even though he has no intent to kill or inflict great bodily harm. LSA-R.S. 14:30.1(A)(2). Unlike first degree murder no intent to harm or kill is necessary to be a principal to second degree murder occurring during the course of a robbery. See State v. Ross, 604 So.2d 1036 (La.App. 1st Cir.1992).
All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals. LSA-R.S. 14:24; State v. Smith, 600 So.2d 1319 (La.1992); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992). Defendant claims that a clear line can be drawn between his act of taking the keys (simple robbery) and the armed robbery-murder committed by Mays. Defendant claims he ran from the scene when he realized Mays' intentions.
The constitutional standard of review for sufficiency of the evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Romero, 574 So.2d 330 (La.1990); State v. Bellamy, supra.
An appellate court's only authority to review questions of fact in a criminal case is under the Jackson v. Virginia sufficiency of the evidence standard and does not extend to an examination of credibility determinations made by the trier of fact. LSA-La. Const. Art. 5, § 5(C); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). It is the province of the jury to resolve conflicting inferences from the evidence.
Thus, an appellate court must resolve any conflict in the evidence in the light most favorable to the prosecution. Facts established by direct evidence or inferred from circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that the defendant was guilty. State v. Jacobs, 504 So.2d 817 (La. 1987); State v. Hearold, 567 So.2d 132 (La. App. 2d Cir.1990); State v. Lott, 535 So.2d 963 (La.App. 2d Cir.1988).
At trial the jury heard the following testimony. The coroner, Dr. McCormick, testified that the victim, Keith Foster, died as a result of a shotgun blast to the left side of his face and neck. The victim was shot at close range, i.e. the gun was within two inches of his face and neck. An examination of the victim's clothing found neither a wallet nor paper money on his person.
Wendell Leshay testified that he was an eyewitness to the shooting. Leshay, Grant and Mays were together and had been drinking. Mays carried a sawed-off shotgun with the handle visible and the shape noticeable under his pants. Leshay identified the state's exhibit as the murder weapon.
Leshay stated that the three were walking to a liquor store when the victim drove by looking for crack cocaine and someone named "Big Boy." According to Leshay, Grant pretended to have drugs to sell. Leshay backed away from the vehicle while Grant and Mays remained at the driver's window. Leshay saw Grant lean into the car. When Mays pulled the sawed-off shotgun out of his pants, Grant took off running and Mays shot the driver.
Ervin Ford testified that he and Foster came to Shreveport looking for "Big Boy" to purchase cocaine. Ford had approximately $35-40 and Foster had some cash with him. During the search for "Big Boy," they encountered three men. Foster inquired about "Big Boy" and the men responded by saying something about match boxes. Grant then *207 leaned into the car and asked Foster "what did he need or what did he want." Foster again inquired about "Big Boy" and then looked at the match boxes Grant was showing. The second man outside the vehicle (Mays) pumped a shell into the chamber of his shotgun and demanded that the men in the car give him their money. Defendant then reached into the car, turned off the ignition, grabbed the keys and backed away from the vehicle. Ford handed his cash to Foster and showed the men that his wallet was empty. Foster gave the cash and his wallet to Mays. Grant and the third man (Leshay) began to run as Mays fired the shotgun. Ford positively identified Mays as the shooter and Grant as the man who reached into the vehicle and removed the keys.
An older lady, Ms. Vater Lee, testified that her house is at the corner where the robbery-homicide occurred. She watched three boys standing on the corner for ten minutes. A car drove up and two of the boys talked to the vehicle's occupant for a few minutes. Ms. Lee then heard a gunshot. According to Ms. Lee, the two men were both standing at the car window when the shot was fired.
When detectives interviewed Grant after he had been identified as one of the men involved in the robbery-homicide, he denied any knowledge of the matter and said that he hadn't been with Mays on the night of the incident. At trial Grant presented no evidence but relied solely on cross-examination of the state's witnesses.
In brief, Grant admits guilt to simple robbery when he took the car keys but claims he had retreated from the criminal conduct when Mays decided to commit an armed robbery. This proposition is based on the testimony of Leshay that Grant ran as soon as Mays produced the gun. Grant did not testify at trial. Grant's argument is that the testimony does not show that he intended the armed robbery and that it can be delineated from the taking of the keys. The jury rejected this argument.
Common sense requires the conclusion that the car keys were taken to prevent Foster from escaping the impending robbery. By themselves the keys had no value to Grant. A reasonable juror viewing the evidence in the light most favorable to the prosecution could have found beyond a reasonable doubt that Grant aided and abetted in the commission of the robbery that resulted in Foster's death. The jury easily could have determined that the taking of the car keys was part of the entire incident. Thus, even if Grant did not intend for the victim to be killed, he is nonetheless guilty of second degree murder under LSA-R.S. 14:30.1(A)(2).
Further, the jury apparently accepted Ms. Lee's testimony that neither Grant nor Mays ran from the scene until after the shot was fired. This court has no authority to question the jury's decision concerning the weight and credibility given Ms. Lee's account.
This assignment is thus without merit; no error patent was noted.
For the foregoing reasons, defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Defendant also raised a second assignment of error addressing the court's instructions to the jury, but failed to brief it. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Perow, 616 So.2d 1336 (La.App. 2d Cir.1993); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir. 1989), writ denied, 558 So.2d 1123 (La.1990).