651 So.2d 1378 (1995)
STATE of Louisiana
v.
Robert H. DUNN.
No. 94-KA-776 B.
Court of Appeal of Louisiana, Fifth Circuit.
February 15, 1995.
*1381 Linda Davis-Short, Staff Appellate Counsel, 24th Judicial Dist., Indigent Defender Bd., Gretna, for appellant Robert H. Dunn.
John M. Mamoulides, Dist. Atty., Louise Korns, Asst. Dist. Atty., 24th Judicial Dist., Parish of Jefferson, Gretna, for appellee State of Louisiana.
Before DUFRESNE, GOTHARD and CANNELLA, JJ.
CANNELLA, Judge.
Defendant, Robert Dunn, appeals from his conviction for second degree murder and sentence to life imprisonment without benefit of parole, probation or suspension of sentence. For the reasons which follow, we affirm the conviction and sentence, as amended and remand.
On October 25, 1992, shortly before noon, Deputy Donald Spell of the Jefferson Parish Sheriff's Office responded to a 911 call in which the caller reported that his neighbor's door was open. Upon arrival at the residence on MacArthur Avenue in Harvey, Louisiana, Deputy Spell found the front door open with a red Harley-Davidson motorcycle parked in front blocking the door. Deputy Spell entered the residence and found the victim, Lawrence Chapman, lying face down on the floor in the second room from the front door. The deputy checked the victim and found no signs of life. He thereafter called the Detective Bureau Crime Scene Division and assisted in securing the scene. After receiving notification from Houston police that defendant had been stopped in the victim's truck and upon obtaining from the truck credit cards and other items belonging to the victim, defendant was arrested in Houston, Texas.
On December 23, 1992, the Jefferson Parish Grand Jury returned an indictment charging defendant and Eudis D. Byles with the first degree murder of Lawrence Chapman, in violation of La.R.S. 14:30. The two men were arraigned on January 22, 1993, and both pled not guilty. On June 16, 1993, at a hearing on numerous pre-trial motions, the trial court granted the state's motion to sever the cases for trial. The state also orally *1382 amended the indictment to charge defendant with the lesser offense of second degree murder, in violation of La.R.S. 14:30.1. This oral amendment was followed by a written amendment to the same effect on June 23, 1992. Defendant's motion to suppress the oral statements that he made during the investigation was denied.
The case against defendant proceeded to trial before a twelve person jury on September 21 and 22, 1993. The jury unanimously returned a verdict of guilty of second degree murder. On October 1, 1993, the trial court sentenced defendant to life imprisonment, without benefit of parole, probation or suspension of sentence. Defendant appeals.
On appeal, defendant assigns five errors and requests a review of errors patent on the face of the record.
Assignment of Error Number One
Defendant argues that the trial court erred in denying the defense request to examine, in camera, written statements and reports in possession of or under the control of the state for Brady material.
At the June 16, 1993 hearing, the trial court addressed the issue of defendant's request for Brady material. Specifically, in defendant's motion for discovery and bill of particulars, he requested the following:
55. Defendant moves the Court to order the State, its agents, servants and employees, including but limited to the District Attorney to provide the defendant with any and all information contained in its files and which such information is favorable to the defendant or exculpatory in any manner; all in accordance with Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 [10 L.Ed.2d 215 (1963)]; and to place the State, its agents, servants and employees including but not limited to the District Attorney under a continuing duty to disclose such evidence or information.
In relation to this request for Brady material, defendant requested that the trial court review certain police reports,[1] in camera, due to his belief that there may be a number of possible written statements and reports that may contain exculpatory evidence that the State may not itself be in possession of but that might be in the possession of police officers. In response to defendant's request, the prosecutor responded:
Judge, the only "Brady" material in possession of the State is the defendant's own statements wherein they claim that it's the other codefendant who actually does the actual murder, so for whatever that's worth, I suppose that from a technical standpoint that is exculpatory to the defense. And they've got copies of that. There are not other exculpatory evidence. There's been no misidentifications. There's been nothing remotely related to being "Brady" that is in the State's possession other than that.
After this response by the state, the trial judge denied defendant's motion to have the court examine the District Attorney's file to determine the existence of Brady material. Defendant noted his objection to the trial court's ruling.
Also, defendant requested that the trial court review witnesses' statements to determine the existence of any Brady material. In response to defendant's request for discovery of all prior statements of witnesses, the state said:
... And the State is not required to turn over any copies of any witnesses' statements unless it was "Brady," and I have put on the record that there is no "Brady" material in any witnesses' statements; therefore, I don't have to turn over any statements other than that of the defendants. And I have turned over statement of both defendants to both counsel.
After the prosecutor's response to counsel's request for the discovery of the statements, defense counsel requested that the judge conduct an in camera inspection to determine whether the statements contained any Brady material. The judge denied defendant's request for an in camera inspection.
*1383 Defendant now contends that the trial judge erred in denying his request for an in camera inspection to determine the existence of any Brady material.
Upon a defense request, the state must disclose evidence that is favorable to defendant when it is material to defendant's guilt or punishment. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); State v. Knapper, 579 So.2d 956 (La. 1991); State v. Myers, 584 So.2d 242 (La. App. 5th Cir.1991), writ denied, 588 So.2d 105 (La.1991), cert. denied, 504 U.S. 912, 112 S.Ct. 1945, 118 L.Ed.2d 550 (1992).
This rule has been expanded to include evidence which impeaches the testimony of a witness where the reliability or credibility of that witness may be determinative of guilt or innocence. Where a specific request is made for such information and the subject matter of such a request is material, or if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the information to the trial judge. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); State v. Ates, 418 So.2d 1326 (La.1982), appeal after remand, 429 So.2d 176 (La.App. 2nd Cir.1983), appeal after remand, 429 So.2d 177 (La.App. 2nd Cir.1983).
Except as expressly provided by statute, a defendant in Louisiana is not entitled to the discovery of reports, memoranda, or other internal state documents which are made by the district attorney or agents of the state, nor is he entitled to witnesses' statements made to the district attorney or agents of the state. LSA-C.Cr.P. art. 723;[2] see also State v. Ates, supra; State v. Cobb, 419 So.2d 1237 (La.1982); State v. Clark, 581 So.2d 747 (La.App. 4th Cir.1991), writ denied, 590 So.2d 63 (La.1991).
However, defendant is entitled to inspect and copy tangible items, including documents, books and papers which are within the state's control and which are favorable to defendant. La.C.Cr.P. art. 718[3]; State v. Cobb, supra. And, as noted initially, the state is required to produce exculpatory evidence upon the request of a defendant. Thus, a defendant may not be denied exculpatory statements made by a witness other than defendant, provided the statement is material and relevant to the issue of guilt or punishment. State v. Ates, supra. Defendant's request for such materials must be specific and relevant. There is, however, no duty to provide defense counsel with unlimited discovery. State v. Ates, supra.
The court may conduct an in camera inspection to determine the nature of the requested materials. However, defendant will be denied an in camera inspection by the trial court where the state has denied possession of the specific information requested and defendant has made no contrary showing. State v. Cobb, supra.
In the present case, the trial judge did not err in denying defendant's request for an in camera inspection. Defendant did not make a specific request for information but merely made a very general request for the trial court to examine certain police reports as well as various statements of witnesses to *1384 determine the existence of Brady material. The district attorney informed the trial court and defense counsel that he was not in possession of any exculpatory information, other than the statement of each defendant blaming the other one for the murder. Absent a contrary showing, we find that the trial judge acted properly in denying defendant's request for the in camera inspection. Therefore, this assignment of error lacks merit.

Assignment of Error Number Two
Defendant argues that the trial court erred in denying the defense request for a copy of the chain of evidence or "chain of custody."
At the June 16, 1993 motion hearing, defendant requested copies of all the scientific reports. In response, the district attorney informed the trial court that he had just turned over all the scientific reports to the defense. Defense counsel responded:
Well, your Honor, I don't really know whether or not all the evidence has been listed on that report. The only way I can tell whether all the evidence has been analyzed or whether the analysis has been completed is by having a list of the chain of evidence itself, and I belief in this motion, and if not in this motion, I request that a copy of the chain of evidence be made available to the defense to determine that. Many times there's maybe fifty to a hundred pieces of evidence that are gleaned by the police department that have standing analysis out there waiting and we don't know whether they are being run or not. The only way we can tell is by looking at the chain of evidence. So unless I have that in my hand, I can't possibly argue with what the State is suggesting.
The trial court thereupon indicated that it was satisfied with the state's response and defense counsel noted an objection. Defense counsel asserts on appeal that the trial court erred in denying him the chain of custody so that he could have properly prepared for cross examination and impeachment of state witnesses. Defense counsel also argues that he needed the information to rebut state arguments regarding testing of the various items of evidence and to determine what additional evidence should be tested or whether additional testing is necessary.
In support of his argument, defendant relies on La.C.Cr.P. art. 719 and State v. Lingle, 461 So.2d 1046 (La.1985). La.C.Cr.P. art. 719 provides:
Upon motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect and copy, photograph, or otherwise reproduce any results or reports, or copies thereof, of physical or mental examination, and of scientific tests or experiments, made in connection with or material to the particular case, that are in the possession, custody, control, or knowledge of the district attorney and intended for use at trial.
In State v. Lingle, supra, the Supreme Court held that a crime scene technician's report fell within the scope of Article 719.
In brief on appeal, defendant argues that the trial court erred in denying him the chain of custody which was used by various state witnesses in their testimony. Defendant is referring to some document that would specify the chain of custody of evidence from the time it was collected until the time it was tested.
There is no showing that such a document exists in this case. The chain of custody comes from the testimony of various witnesses who had custody of the evidence. Defense counsel had ample opportunity to cross examine these witnesses regarding any omissions in the chain of custody. It is not disputed that the state must lay the proper foundation prior to the introduction of certain evidence at trial, which would include the chain of custody of the evidence to insure the integrity of the evidence. However, there is no error asserted herein concerning inadequacies in the proof set forth in this case in that regard. Therefore, we find no merit in defendant's assignment of error in this regard.
Defendant also seems to be alleging error in the trial court's denial to him of a chain of evidence or list of the evidence collected in the case. Under the circumstances of this case, we find that this argument likewise lacks merit.
*1385 First, there are no specific allegations concerning what defendant was denied or how he might have been prejudiced. The state asserted that it turned over all scientific reports to the defense. Moreover, the trial court ruled that the defense was to be given access to all evidence and photographs in the case. Therefore, without more specific allegations, this court is unable to discern in what regard if any, defendant was denied any information that existed or that he was entitled to by law. Accordingly, we find no merit in this assignment of error.

Assignment of Error Number Three
Defendant argues that the trial court erred in denying the defense the opportunity to fully question the state's witnesses at the motion to suppress defendant's statements.
In the present case, defense counsel filed a Motion to Suppress on January 5, 1993, alleging that defendant's confessions and other inculpatory statements were inadmissible on two grounds:
1. They were not made to police officers or to anyone else freely and voluntarily, but were made under the influence of fear, intimidation, threats or other duress, or because of promises or other inducements; and/or
2. Defendant had not been advised of his rights under Miranda, or had invoked his right to remain silent or to have an attorney and this right had not been honored.
Defendant now contends that at the June 16, 1993 suppression hearing, the trial court refused to allow defense counsel to fully question the officers who took defendant's statements to determine whether defendant's waiver was freely and voluntarily given or whether the statements were made under the influence of fear, intimidation, threats, or other duress. Defendant asserts that the trial judge's failure to allow certain of defense counsel's questions hampered his right to confront and cross-examine witnesses against him.
In brief, defense counsel sets forth numerous alleged errors in the trial judge's rulings which he contends adversely affected defendant's right to confront and cross-examine witnesses against him, as follows:
1) Defendant claims that the trial judge erred by not allowing questions of Detective Saacks regarding whether the officer received any information from the Texas police as far as what defendant may have told them.
2) Defendant complains that the trial court erred in sustaining the state objection to a defense question as repetitive when the defense was attempting to elicit contradictory testimony from the officer concerning the first time he saw defendant. (The record reflects that no objection was made by the defense to this ruling and defense counsel was in fact allowed to cross-examine the officer on the point and clarify any apparent contradictions in the testimony.)
3) Defendant contends that, the trial court erred by refusing to allow defense counsel to question the detective regarding his suspicions that defendant had deceptively answered questions in his first statement.
4) Defendant further contends that the trial judge erred in sustaining the state's objection when defense counsel tried to question the detective regarding the use of the polygraph results. (The transcript reveals that defendant was actually attempting to discover how many polygraphs were taken and specifically if an additional polygraph was taken in Louisiana.)
5) Defendant contends that the trial court erred in not allowing him to question the detective regarding the reason he again read defendant his rights prior to his fifth statement. The state objected that the question was argumentative and calling for a legal conclusion. (The transcript shows that defendant was allowed to question the officer about the advice of rights given to defendant prior to the fifth statement; however, he was not allowed to delve into the reasons the officer chose to re-advise defendant of his rights.)
6) In his final alleged error, defendant claims that the trial judge erred in sustaining the State's objection when defendant attempted to ask Lieutenant English about testimony that defendant gave at the extradition hearing in Texas.
*1386 Defendant's right to confront and cross-examine witnesses, found in the Sixth Amendment to the United States Constitution, is a fundamental right and applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). In addition, this right to confrontation is guaranteed by Article I, Section 16 of the Louisiana Constitution of 1974. State v. Rankin, 465 So.2d 679 (La.1985).
In State ex rel Nicholas v. State, 520 So.2d 377 (La.1988), the Louisiana Supreme Court discussed a defendant's right to confront and cross-examine his accusers, stating as follows:
Confrontation means more than being allowed to confront the witnesses. Our state constitution expressly guarantees a defendant the right to cross-examine adverse witnesses. Id. The U.S. Supreme Court cases construing the Sixth Amendment's confrontation clause hold that a primary interest secured by it is the right of cross-examination. Davis v. Alaska, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347, 353 (1974) (citing Douglas v. Alabama, 380 U.S. 415, 418 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934, 937 (1965)). Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject to the discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness. Davis v. Alaska, supra 415 U.S. at 316, 94 S.Ct. at 1110, 39 L.Ed.2d at 353; State v. Nash, 475 So.2d 752, 754-755 (La.1985); State v. Hillard, 398 So.2d 1057, 1059-1060 (La.1981); State v. Toledano, 391 So.2d 817, 820 (La.1980).
The three main functions of cross-examination are: (1) to shed light on the credibility of the direct testimony; (2) to bring out additional facts related to those elicited on direct; and (3) to bring out additional facts which tend to elucidate any issue in the case. McCormick, supra § 29, at 63; See La.R.S. 15:280; Proposed Louisiana Code of Evidence, art. 611(B) and the comments thereto. See also Davis v. Alaska, supra, 415 U.S. at 415-417, 94 S.Ct. at 1110-1111, 39 L.Ed.2d at 353-354; State v. Nash, supra.
State ex rel Nicholas v. State, supra at p. 380.
However, the general rules of evidence are applicable to determine the proper scope of cross-examination. The evidence must be relevant to the material issue at trial. State v. Brown, 395 So.2d 1301 (La. 1981); State v. Gabriel, 542 So.2d 528 (La. App. 5th Cir.1989), writ denied, 558 So.2d 566 (La.1990).
The defense should be allowed substantial freedom in cross-examining state witnesses. However, such freedom may be restrained by the trial court when the questions asked are irrelevant or immaterial to the case. State v. Bourg, 615 So.2d 957 (La.App. 1st Cir.1993).
La.C.E. art. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination more probable or less probable than it would be without the evidence." La.C.E. art. 402 discusses the admissibility of relevant evidence as follows:
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation. Evidence which is not relevant is not admissible.
The trial court is vested with much discretion in controlling the scope and extent of cross-examination and his rulings will not be disturbed absent an abuse of that discretion. State v. Garrison, 400 So.2d 874 (La. 1981); State v. Gabriel, supra.
Likewise, a trial judge's ruling as to relevancy should not be disturbed absent a showing of clear abuse of discretion. State v. Garrison, supra.
After reviewing the transcript and the specific rulings in context, we find no error in the trial court's rulings on these matters. Most of the defense questioning was limited because of a lack of relevancy or *1387 because of the repetitive nature of the questions. Questions concerning the content of the statements are not relevant at a suppression hearing. The trial court did not limit defense questions that pertained to the relevant issue, whether or not the statements were made freely and voluntarily, and were not repetitive. Defendant was not deprived of his confrontation rights. Accordingly, we find no merit in this assignment of error.

Assignment of Error Number Four
Defendant argues that the trial court erred in denying the defense motion to suppress defendant's statements. Defendant alleges that the statements were not freely and voluntarily given but rather were the result of persistent and repeated interrogations over a three day period by skilled law enforcement officers, who used intimidating and threatening tactics.
Before a confession or inculpatory statement may be introduced into evidence, the state must prove beyond a reasonable doubt that the statement was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; LSA-C.Cr.P. art. 703(D); State v. Vaccaro, 411 So.2d 415 (La.1982); State v. Pittman, 585 So.2d 591 (La.App. 5th Cir. 1991), writ denied, 586 So.2d 545 (La.1991). If the statement was elicited during custodial interrogation the state must also show that defendant was advised of his constitutional rights as set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Castillo, 389 So.2d 1307 (La. 1980), cert. den., 453 U.S. 922, 101 S.Ct. 3159, 69 L.Ed.2d 1004 (1981); State v. Crook, 517 So.2d 1131 (La.App. 5th Cir.1987), writ denied, 541 So.2d 885 (La.1989).
Whenever a statement is taken without the presence of an attorney, a heavy burden rests upon the state to demonstrate that the accused knowingly and intelligently waived his privilege against self-incrimination and his right to have counsel present. State v. Davis, 407 So.2d 666 (La.1981); State v. Crook, supra.
Allegations of specific instances of police misconduct in reference to a statement must be specifically rebutted; the state may not rely on general disclaimers of inducements or promises. State v. Serrato, 424 So.2d 214 (La.1982). The state need not wait until after the defendant's case-in-chief to meet allegations, but may anticipatorily rebut a defendant's allegations. State v. Vessell, 450 So.2d 938 (La.1984); State v. Crook, supra.
In deciding the admissibility of a confession, the trial judge must consider the totality of the circumstances. State v. Serrato, supra; State v. Pittman, supra. His decision in this regard is entitled to great weight and will not be overturned on appeal unless it is not supported by the evidence. State v. Benoit, 440 So.2d 129 (La.1983); State v. Pittman, supra.
Based on the facts adduced at the suppression hearing, there is nothing to indicate that defendant's statements were not freely and voluntarily given. The testimony of the police officers showed that defendant was advised of his rights and expressed his willingness to waive his rights. Although the statements were taken over a three day period, the officers testified that defendant, at no point, requested an attorney, and, in fact, was very cooperative throughout the proceedings. Moreover, there was neither testimony by defendant nor argument by counsel which contradicted the testimony of the police officers about the free and voluntary nature of defendant's statements. Accordingly, we find that the trial judge properly denied defendant's motion to suppress the statements and this assignment of error has no merit.

Assignment of Error Number Five
Defendant argues that the evidence was insufficient to support the conviction. By this assignment, defendant challenges the sufficiency of the evidence used to convict him. Specifically, defendant contends that other than his statement, there is no direct evidence that he was even near the scene at the time Chapman was murdered.
The standard for testing the sufficiency of the evidence was set forth by this court in *1388 State v. Burrow, 565 So.2d 972 (La.App. 5th Cir.1990), writ denied, 572 So.2d 60 (La.1991) as follows:
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Davis, 540 So.2d 600 (5th Cir.1989). When circumstantial evidence is used to prove the commission of the offense, LSA-R.S. 15:438 mandates that, "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." The requirement of LSA-R.S. 15:438 does not establish a standard separate from the Jackson standard, but rather provides a helpful methodology for determining the existence of reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984); State v. DiLosa, 529 So.2d 14 (5th Cir.1988), writ denied, 538 So.2d 1010 (La.1989). Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Porretto, 468 So.2d 1142 (La.1985), dissenting opinion, 475 So.2d 314 (La.1985).
State v. Burrow, supra at 976.
In the present case, defendant was convicted of second degree murder. La.R.S. 14:30.1 defines that offense, in pertinent part, as follows:
A. Second degree murder is the killing of a human being:
(1) When the offender has a specific intent to kill or to inflict great bodily harm; or
(2) When the offender is engaged in the perpetration or attempted perpetration of aggravated rape, forcible rape, aggravated arson, aggravated burglary, aggravated kidnapping, aggravated escape, drive-by shooting, armed robbery, first degree robbery, or simple robbery, even though he has no intent to kill or to inflict great bodily harm.
Furthermore, all persons concerned in the commission of a crime whether present or absent, and whether they directly commit the act constituting the offense, aid or abet in its commission, or directly or indirectly counsel or procure another to commit the crime are principals. La.R.S. 14:24; State v. Myers, supra.
In the present case, the state contends that the evidence was sufficient to prove that defendant was guilty of second degree murder under both La.R.S. 14:30.1A(1) and 14:30.1A(2), set forth supra, if not as the actual killer, then at least as a principal to the murder pursuant to La.R.S. 14:24.
Under La.R.S. 14:30.1A(1), the state must show that defendant 1) killed the victim; and 2) that defendant had the specific intent to kill or to inflict great bodily harm. State v. Robinson, 598 So.2d 407 (La.App. 5th Cir. 1992).
Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Edge, 504 So.2d 1169 (La.App. 5th Cir.1987), writ denied, 507 So.2d 226 (La.1987). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard, supra. State v. Huizar, 414 So.2d 741 (La.1982).
Under La.R.S. 14:30.1A(2), the state must prove the killing of a human being when the offender is engaged in the perpetration or attempted perpetration of certain enumerated felonies, even though he has no intent to kill or inflict great bodily harm. In this case, the state at trial alleged that the killing occurred during the perpetration or attempted perpetration of either an armed robbery, simple robbery, or aggravated burglary. Unlike first degree murder, no intent *1389 to kill or inflict great bodily harm is necessary to be a principal to second degree murder occurring during the course of a robbery. State v. Grant, 623 So.2d 204 (La.App. 2nd Cir.1993), writ denied, 629 So.2d 400 (La. 1993).
In the present case, we find that the evidence presented against defendant was sufficient to sustain his conviction for second degree murder under either of the two theories advanced by the state. Defendant, through his statements, placed himself at the scene as a lookout, although he claimed he had nothing to do with the actual killing and did not know that a homicide had occurred. He stated he waited outside for 45 minutes until Byles came out with a metal box and keys. He also admitted that he heard banging while Byles was inside. Defendant was arrested in Houston for public intoxication. At that time, he was found driving the victim's truck, which contained various items belonging to the victim, including his credit cards, a small metal strong box that contained some coins, a jacket and a television. In addition, when defendant was arrested, he was wearing a pair of motorcycle boots which apparently belonged to the victim.
Also, Emma Robouin, a barmaid at Ann's Lounge, identified defendant as one of the individuals who came in the bar the Friday before the victim's body was found, asking if she could change $40 worth of quarters for him.
Furthermore, Dr. MacKenzie testified that due to the lack of defense wounds on the victim's body, the absence of drugs or alcohol in his system and the lack of markings of restraint or trauma to the head, he concluded that more than one individual was involved in the homicide.
In contrast to the testimony presented by the state which implicated defendant in the crime, defendant presented the testimony of Troy Fonseca. Fonseca testified that original co-defendant Byles confessed to him while they were incarcerated together at the Gretna jail. Fonseca testified that Byles told him that he, Byles, slit a guy's throat and also indicated that his partner, defendant, was outside the home, sitting in a truck when he slit that person's throat.
Clearly, as can be seen from the unanimous jury verdict, the jurors chose to believe the evidence which indicated defendant's involvement in the murder, either as an actual participant in the murder or as a principal. It is not the function of an appellate court, reviewing a criminal conviction, to evaluate the credibility of witnesses and to overturn a jury's factual determination of guilt. State v. Richardson, 425 So.2d 1228 (La.1983). Rather, its function is to review the evidence in the light most favorable to the prosecution and determine whether there is sufficient evidence to support the jury's conclusion. State v. Burrow, supra.
Based on the evidence presented, we find that the state met its burden of proving, under either La.R.S. 14:30.1A(1) or La.R.S. 14:30.1A(2), that defendant was guilty of second degree murder of Chapman, either as the actual killer or as a principal. Under La.R.S. 14:30.1A(1), the state proved that defendant had the specific intent to kill which was inferred from the strangulation of the victim with a bullwhip as well as the slitting of the victim's throat with a knife.
Moreover, there is ample evidence to support the conviction under La.R.S. 14:30.1A(2). The state clearly proved that the killing occurred during the perpetration of aggravated burglary (La.R.S. 14:60) in which defendant was a participant.
Finally, defendant's conviction can be sustained on the evidence presented as a principal. In State v. Grant, supra, the court found the evidence sufficient to sustain defendant's conviction as a principal to second degree murder where defendant admitted that he took the car keys from the car, which prevented the victim from escaping the robbery, and a bystander testified that defendant did not run from the scene until after his companion fired a shotgun at the victim. The court held that the evidence supported the conviction based on the finding that the defendant therein aided and abetted in the commission of a robbery that resulted in the victim's death, even if defendant did not intend for the victim to be killed. Likewise, here, proof of defendant's participation in the *1390 burglary, at least as a lookout if not by assisting Byles inside, was sufficient to support his conviction as a principal.
Accordingly, we find sufficient evidence in the record to support defendant's conviction for second degree murder and this assignment has no merit.

Assignment of Error Number Six
Assigned as error are any and all errors patent on the face of the record. Defendant requests that this court conduct a review for any errors patent on the face of the record. In doing so, in compliance with La.C.Cr.P. art. 920, we note that the trial court failed to give defendant credit for time spent in actual custody prior to the imposition of sentence as mandated by La.C.Cr.P. art. 880. Therefore, we order that the sentence, and the minute entry and the commitment reflecting the sentence, be amended to give defendant credit for time served in actual custody prior to the imposition of sentence. Our review further reveals that, at the time of sentencing, the trial judge did not inform defendant of the prescriptive period for post-conviction relief as is mandated by La.C.Cr.P. art. 930.8C. However, failure to so inform defendant does not constitute grounds for reversing the sentence. La. C.Cr.P. art. 921; State v. Kershaw, 94-141 (La.App. 5th Cir. 9/14/94) 643 So.2d 1289. The sentence will be affirmed, as amended to give credit for time served, and the case is remanded to the district court with instruction to inform defendant of the provisions of La.C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings.
Accordingly, for the reasons stated above, defendant's conviction for second degree murder is affirmed and his sentence, to life imprisonment without benefit of parole, probation or suspension of sentence, as amended to give credit for time served, is affirmed. The case is remanded to the district court with instructions to notify defendant of the provisions in La.C.Cr.P. art. 930.8.
CONVICTION AFFIRMED; SENTENCE AFFIRMED, AS AMENDED; CASE REMANDED.
NOTES
[1] In response to defendant's request for a copy of the initial police report, the trial judge had previously ordered the state to submit all supplemental reports to the court within seven days for an in camera inspection to determine to what initial reports defendant was entitled.
[2] LSA-C.Cr.P. art. 723 reads:

Except as provided in Articles 716, 718, 721, and 722, this Chapter does not authorize the discovery or inspection of reports, memoranda or other internal state documents made by the district attorney or by agents of the state in connection with the investigation or prosecution of the case; or of statements made by witnesses or prospective witnesses, other than the defendant, to the district attorney or to agents of the state.
[3] LSA-C.Cr.P. art. 718 reads:

Subject to the limitation of Article 723, on motion of the defendant, the court shall order the district attorney to permit or authorize the defendant to inspect, copy, examine, test scientifically, photograph, or otherwise reproduce books, papers, documents, photographs, tangible objects, buildings, places, or copies of portions thereof, which are within the possession, custody, or control of the state, and which:
(1) are favorable to the defendant and which are material and relevant to the issue of guilt or punishment, or
(2) are intended for use by the state as evidence at the trial, or
(3) were obtained from or belong to the defendant.
The court may determine whether evidence is subject to the provisions of paragraph (1) hereof by in camera inspection.